## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| **LEE ANN SOMMERVILLE, individually, and on behalf of all others similarly situated,** | **Case No.: 2:19-cv-** 00878 _____<br>**Judge:** _____ |
| *Plaintiffs*, | |
| **v.** | |
| **UNION CARBIDE CORPORATION,** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lee Ann Sommerville ("Plaintiff"), individually and on behalf of a putative class of all similarly situated persons ("Class Members" or "Class"), sue Defendant Union Carbide Corporation ("Union Carbide" or "Defendant") and, based upon personal knowledge and on investigation of counsel and review of public documents and information, allege as follows:

### INTRODUCTION

1.      Plaintiff brings this class action against Union Carbide, the owner and operator of a manufacturing facility in South Charleston, West Virginia, for damages resulting from Defendant's dangerous and reckless emission of Ethylene Oxide.

2.      Ethylene oxide is a powerful cancer-causing gas. The United States Environmental Protection Agency (EPA), the National Toxicology Program, the World Health Organization (WHO), and the International Agency for Research on Cancer (IARC) all classify Ethylene Oxide as a known human carcinogen.

3.      Defendant's facility in South Charleston manufactures large volumes of Ethylene Oxide gas for industrial uses. This toxic gas is then released into the atmosphere by Defendant in both controlled and uncontrolled releases. These releases have occurred for several decades.

4.      Plaintiff and Class Members have lived within the vicinity of Defendant's South Charleston plant, and have been exposed to large volumes of toxic, cancer-causing Ethylene Oxide gas. Although Ethylene Oxide is odorless and colorless, and Plaintiff and Class Members can neither see nor smell the gas, it is in the air they breathe and all around them. Plaintiff and Class Members have been inhaling and consuming large amounts of Ethylene Oxide when they brush their teeth, pet their dogs, talk with their children about their day at school, and throughout their daily lives.

5.      As a result of their exposure to Ethylene Oxide emitted by Defendant, Plaintiff and Class Members acquired some of the highest cancer risks in the United States. The EPA estimates that Class Members are up to 7 times more likely to develop cancer than the average American.

6.      Union Carbide's irresponsible and reckless conduct, and the pollution resulting therefrom, has necessitated that Plaintiff and Class Members obtain medical monitoring to mitigate their increased risk of developing cancer, including screening, monitoring, and checking to detect any abnormalities that may be indicative of cancer, and to ensure that latent disease processes can be immediately identified and aggressively treated.

7.      Plaintiff individually, and on behalf of Class Members, seek compensatory damages arising out of chemical releases, discharges, and leaks from Union Carbide's South Charleston Plant. These damages include the cost of a program for medical monitoring for continual screening and detection of illness, disease, or disease processes made necessary because of exposure to the releases of toxic gas released by Defendant.

## PARTIES

8.      Plaintiff Lee Ann Sommerville is a citizen of West Virginia and lives in Kanawha County. As a result of Defendant's operations at Defendant's South Charleston Plant, Plaintiff has been exposed to, and inhaled, high levels of Ethylene Oxide gas.

9.      Union Carbide is a New York corporation with its principal place of business in Seadrift, Texas. It owns and operates the South Charleston Plant located at 437 MacCorkle Avenue, SW South Charleston, WV 25303.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are more than 100 putative class members, and Plaintiff (and many  Class Members)  and Defendant are citizens of different states.

11.     This Court has jurisdiction over Union Carbide because Union Carbide operates an industrial facility in this District. Through its regular business operations in this District, Union Carbide intentionally and regularly avails itself of the markets and jurisdiction in this District, conferring this Court with personal jurisdiction over Union Carbide.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, defendants' operations in this District emitted ethylene oxide within this District, causing harm to Plaintiffs and Class Members residing in this District.

## STATEMENT OF FACTS

**A.      ETHYLENE OXIDE**

13.     Ethylene Oxide ("EtO") is a colorless, odorless gas used in the manufacture of antifreeze, ethylene glycol, polyethylene glycol, glycol ethers, ethanaolamines, surfactants, diethylene glycol, triethylene glycol, tetraethylene glycol, solvents, detergents, polyurethane foam, adhesives and other chemicals and polymers. It is also used to sterilize medical equipment and plastic devices.[1]

14.     Commercial medical equipment sterilizers use ethylene oxide to sterilize health care products. The EtO sterilization process begins by placing medical equipment in a gas chamber. After air is pumped out of the room, EtO is introduced and allowed to diffuse into the products for several hours. Once the medical equipment is sterilized, the EtO is pumped out of the chamber and the remaining EtO is allowed to slowly dissipate.

15.     Commercial chemical producers process EtO to synthesize ethylene glycol, a building block for synthetic fibers (e.g., upholstery, carpet), plastics, PVC pipe and cosmetics.[2]

16.     Union Carbide is the world's leading producer of EtO, and the South Charleston Facility is one of the only facilities in the U.S. that manufactures EtO.

17.     Defendant's South Charleston Plant manufactures EtO and utilizes EtO for other heavy industrial processes. As a result of these operations, Defendant's South Charleston Plant emits huge volumes of EtO gas every year. Since at least 1978, the South Charleston Plant has emitted tons of Ethylene Oxide gas into the air. This in turn contaminates the air in the surrounding communities.

18.     Unfortunately, people cannot see or smell EtO when it is in the air.[3] As such, Plaintiff and Class Members have unknowingly been exposed to carcinogenic EtO oxide for decades while

---

[1] https://www.epa.gov/hazardous-air-pollutants-ethylene-oxide/background-information-ethylene-oxide#what
[2] https://www.epa.gov/il/ethylene-oxide-emissions-frequent-questions
[3] https://www.epa.gov/il/ethylene-oxide-emissions-frequent-questions

Union Carbide knew, or should have known, that the EtO it was releasing was dangerous, toxic, carcinogenic, mutagenic, and harmful to local residents.

**B.      HEALTH EFFECTS OF ETHYLENE OXIDE EXPOSURE**

19.      EtO is one of 187 pollutants that EPA has classified as "hazardous air pollutants," also called "air toxics." It is dangerous, toxic, carcinogenic, and mutagenic. EtO is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body. Its deleterious properties have been widely known for decades.

20.      While acute inhalation exposure to high concentrations of EtO can cause headache, dizziness, nausea, fatigue, respiratory irritation, vomiting and other types of gastrointestinal distress, studies show that long-term exposure to EtO increases the risk of cancers of the white blood cells, including, but not limited to, non-Hodgkin lymphoma, myeloma, and lymphocytic leukemia. Studies also show that long-term exposure to EtO increases the risk of breast cancer in females.[4]

21.      U.S. companies became broadly aware of EtO's carcinogenic effects in 1977, when the National Institute of Occupational Safety and Health ("NIOSH") recommended that EtO be considered as mutagenic and potentially carcinogenic to humans, that occupational exposure be minimized, and that alternate sterilization procedures be used.[5] In 1981, based on additional lab studies wherein EtO induced cancer in animals, NIOSH reconfirmed its concerns that EtO was a potential occupational carcinogen.[6]

---

[4]      https://www.epa.gov/hazardous-air-pollutants-ethylene-oxide/frequent-questions-health-information-about-ethylene-oxide
[5] Center for Disease Control & Prevention, Special Occupational Hazard Review With Control Recommendations: Use Of Ethylene Oxide As A Sterilant In Medical Facilities, August 1977, https://www.cdc.gov/niosh/docs/77-200/default.html
[6] Center for Disease Control, Current Intelligence Bulletin 35, May 1981, EtO: Evidence of Carcinogenicity, https://www.cdc.gov/niosh/docs/81-130/default.html

22.     Union Carbide, of all companies, should have been aware of the 1977 NIOSH recommendations, because they were based on studies performed on workers at Union Carbide's South Charleston Facility.

23.     In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

24.     In 1987, the state of California officially designated EtO a carcinogen.

25.     NIOSH subsequently published an epidemiological study of EtO which analyzed over 18,000 employees working with EtO at 14 different industrial facilities. The study found sufficient evidence to support a causal link between exposure to EtO and increased mortality from lymphatic and hematopoietic cancers.[7]

26.     As a result of these findings and others, in 1994 the World Health Organization listed EtO as a Group 1 human carcinogen, the agency's highest risk classification. In 2000, the U.S. Department of Health and Human Services revised classified EtO as "known to be a human carcinogen."

27.     Exposure to EtO has been widely studied and its negative health effects are well documented. Presently, there is evidence linking EtO exposure to increased risk of lymphatic and hematopoietic cancer such as lymphomas, myelomas, and leukemias; breast cancer; tumors in the lungs, uterus, and the brain; cancers in connective tissues and bones; and reproductive and developmental impairments including increased rates of miscarriage and infertility.

---

[7] Steenland, K; Stayner, L; Dedden, J. (2004). Mortality analyses in a cohort of 18,235 ethylene oxide exposed workers: Follow up extended from 1987 to 1998. Occup Environ Med 61:2-7

28.    EPA classified EtO as a human carcinogen in December 2016 and considers any exposure, however small, to create cancer risk. This is because EtO is a powerful mutagen and can damage DNA.[8]

## C.    UNION CARBIDE'S ETHYLENE OXIDE EMISSIONS

29.    Defendant's South Charleston Plant manufactures EtO and emits huge volumes of EtO gas every year. Since at least 1978, the South Charleston Plant has emitted multiple tons of EtO gas into the air every year. These emissions contaminate the air in communities in proximity to the South Charleston Plant.

30.    The EtO emitted by Defendant's South Charleston Plant remains in the air for months, becomes concentrated in atmospheric inversions, and moves through neighboring communities through prevailing winds. Because its half-life in the atmosphere is 211 days, EtO remains in the air that Plaintiff and Class Members breathe long after it has been emitted.[9]

31.    In addition, EtO is heavier than air, meaning that it can linger and travel along the ground.[10] Consequently, defendant's releases of EtO are likely to have lingered at breathing level in the communities around its facility for a considerable time, causing ongoing and prolonged harm to Plaintiffs and Class Members.

32.    Unfortunately, people cannot see or smell ethylene oxide when it is in the air.[11] As such, Plaintiff and Class Members have unknowingly been exposed to carcinogenic EtO for decades while Defendant knew, or should have known, that the EtO it was releasing was dangerous, toxic, carcinogenic, mutagenic, and harmful to local residents.

## D.    KANAWHA COUNTY AIR QUALITY AND THE HEALTH IMPLICATIONS

---

[8] https://www.epa.gov/hazardous-air-pollutants-ethylene-oxide/frequent-questions-health-information-about-ethylene-oxide
[9] https://www.ncbi.nlm.nih.gov/books/NBK321408/
[10] https://www.atsdr.cdc.gov/mmg/mmg.asp?id=730&tid=133
[11] https://www.epa.gov/il/ethylene-oxide-emissions-frequent-questions

33.     Scientific analysis demonstrates that defendants' EtO emissions have exposed Plaintiffs and Class Members to hazardous levels of EtO for at least 41 years.

34.     The EPA's 2014 National Air Toxics Assessment ("NATA") demonstrated severe cancer risks in the area surrounding the South Charleston plant. The 2014 NATA places the cancer risks of the census tracts measured in and around South Charleston as the highest in West Virginia and among the highest in the country.

35.     The NATA database also makes clear that the elevated cancer risks in and around South Charleston are almost entirely due to Union Carbide's EtO emissions.

36.     While the 2014 NATA reveals shockingly high risks of cancer across a large area near the South Charleston Plant, these risks are likely understated as they do not reflect the totality of Union Carbide's emissions.

37.     Throughout the period of exposure, the area around the South Charleston plant has contained numerous homes and businesses, as well as numerous schools and daycare facilities. As a result, thousands of residents have been exposed to elevated levels of EtO.

38.     Defendant operated without sufficient pollution controls to limit and/or eliminate the emissions of toxic EtO and, as a result, exposed thousands of residents in neighboring areas to a carcinogenic, mutagenic chemical that materially diminished their health and increased their likelihood of developing cancer.

39.     Defendant knew that: (1) its manufacturing facility operated without sufficient pollution control systems necessary to reduce the releases of EtO to a non-harmful level; (2) the release of EtO spread well beyond the property boundaries of the South Charleston Plant; and (3) on-going exposure to EtO, a known carcinogen, would unnecessarily diminish the health of nearby residents and increase the likelihood that nearby residents would develop cancer.

40.     Defendant negligently failed to implement control processes that would eliminate EtO emissions, failed to adopt alternative processes that would eliminate EtO emissions, and failed to warn the Plaintiff and Class Members that the air was materially contaminated with toxic levels of EtO.

41.     Defendant's conduct unnecessarily contaminated the air Plaintiff and Class Members breathe every day, and exposed Plaintiff and Class Members to unsafe air. As a result, Plaintiffs and Class Members have inhaled toxic carcinogenic gasses.

42.      Throughout the course of its operation of the South Charleston Plant, Defendant released EtO into the environment and failed to remediate the contamination that it has caused.

## E.     PLAINTIFF AND CLASS MEMBERS HAVE SUFFERED DAMAGES AND REQUIRE DIAGNOSTIC TESTING

43.     Plaintiff and Class Members have lived within the vicinity of the South Charleston Plant during the time Defendant has been emitting and exposing the residents of nearby areas to toxic levels of EtO.

44.     As a result of Defendant's negligent and reckless emissions of EtO, Plaintiff and Class Members have suffered significant exposure to hazardous EtO gases relative to the general population in the U.S.

45.     EtO is a proven human carcinogen, and is unsafe for human consumption at any level of exposure.

46.     Plaintiff and Class Members so exposed have lived in a census tract which has been identified to present more than a doubled increase in likelihood of developing cancer as compared to the vast majority of the U.S. population living in other areas.

47.     As a proximate result of Defendant's negligent and reckless conduct, Plaintiff and Class Members are at an increased risk of developing cancer, and periodic diagnostic medical examinations are reasonably necessary.

48.     As a result of that exposure Plaintiff and Class Members require an award of the cost of a medical monitoring program necessary to detect the onset of physical harms, illnesses, disease processes or disease.

49.     Monitoring procedures exist that make possible the early detection of cancer, the disease processes of cancer, and the progression of biomarker abnormalities. These monitoring procedures will benefit Plaintiff and Class Members, are different from what would normally be recommended in the absence of EtO exposure, and are reasonably necessary due to Plaintiff's and Class Members' exposure to Defendant's EtO emissions.

50.     As a direct result of Defendant's conduct, Plaintiff and Class Members are in need of the costly diagnostic testing. Specifically, the cost of the monitoring procedures that are reasonably necessary to enable Plaintiff and Class Members to obtain early detection and diagnosis of medical conditions, including abnormalities indicative of cancer, are necessary as a result of Defendant's tortious conduct described herein.

51.     Diagnostic testing for early signs or symptoms of cancer is reasonably medically necessary to assure early diagnosis, effective treatment of the disease, and to mitigate the risks caused by Defendant's negligence.

52.     Monitoring procedures exist that comport with contemporary scientific principles and make possible early detection of conditions that Plaintiff and Class Members are at increased risks of developing.

53.     Plaintiff and Class Members seek as damages the costs of such diagnostic testing for the early detection of injury and to allow for early treatment beneficial to Plaintiffs and Class Members. Diagnostic testing will identify the need for adequate treatment, management, and rehabilitation in the event cancer is diagnosed.

54.     Plaintiff and Class Members also seek all other available and necessary relief in connection with this claim.

### CLASS ALLEGATIONS

55.     Plaintiff seeks relief on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of a class defined as follows:

> All natural persons who have resided within census tracts 54039000100, 54039012900, 54039000200 (the "class zone") for a period of one year or more, at any point between January 1, 1978 and the date of this complaint (the "class period").



Fig. 1: the Class Zone is represented in the dark purple and light blue shaded areas. The green and yellow shaded areas lie outside of the Class Zone

56.     Excluded from the Class are Defendant and any of its affiliates, parents or subsidiaries; all employees of Defendant; all persons who have been diagnosed with cancer; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

57.     Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

58.     The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

59.     **Numerosity. Fed. R. Civ. P. 23(a)(1).**  Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical.  While the exact number of Class Members is unknown to Plaintiff at this time, the proposed Class includes thousands of residents who were unlawfully exposed to EtO. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

60.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).**  Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

    a.      Whether Defendant's conduct was negligent;

    b.      Whether Defendant owed a duty of care to Class Members;

c.      Whether the duty of care owed to the Class included the duty to protect against exposures to unsafe and unnecessarily high levels of EtO emissions;

d.      Whether Defendant breached its duty to warn the Class of and protect the Class from the long-term health risks and consequences of exposure to high levels of EtO;

e.      Whether medical monitoring and early detection will provide benefits to members of the Class; and

f.      Whether Plaintiff and Class members are entitled to relief.

61.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Consistent with Rule 23(a)(3), Plaintiff's claims are typical of those of the putative Class Members.  Plaintiff resides in census tracts 54039012900, within the Class Zone surrounding the South Charleston Plant, and have resided in the Class Zone for over one year. Plaintiff's damages and injuries are akin to those of the Class Members, and Plaintiff seeks relief consistent with the relief of the Class Members.

62.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class.   Plaintiff has no conflicts of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including environmental litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of Class Members.

63.    **Superiority. Fed. R. Civ. P. 23(b)(3).**  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even

when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

64.    **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

65.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

66.    Finally, all members of the proposed Class are readily ascertainable as they are all current or former residents of defined tracts. Class Members can be identified and their contact information ascertained for the purpose of providing notice to the Class.

<u>**COUNT I**</u>
**NEGLIGENCE**

67.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

68.     Defendant owed Plaintiff and Class Members a duty to operate its South Charleston plant in a manner which would not cause Plaintiff and Class Members injury or harm.

69.     Defendant negligently breached its duty of care by releasing and allowing the release of EtO from its South Charleston Plant, by failing to take steps to minimize or eliminate the release of EtO, by failing to utilize alternative manufacturing processes that would not result in the release of EtO, and by releasing EtO into a heavily populated community.

70.     Defendant owed Plaintiff and Class Members a duty of reasonable care commensurate with the risk of the operations at the South Charleston Plant.

71.     Given the likelihood of contamination of neighboring areas and exposure to their occupants, Defendant had a duty to investigate the extent to which EtO released from the South Charleston Plant was likely contaminating the air at levels to materially increase nearby residents' likelihood and risks of developing cancer and other diseases.

72.     Defendant negligently breached its duty by, inter alia:

a.   Emitting dangerous volumes of EtO into the air;

b.   Failing to employ safe methods to adequately control or eliminate EtO emissions from the facility;

c.   Failing to use alternative manufacturing processes which would not result in the emission of EtO into neighboring communities;

d.   Failing to locate its EtO manufacturing units in an unpopulated, or at least much less populated, area; and

e.   Failing to warn neighboring residents being exposed to EtO at levels that increase their exposure to disease.

73.     As a direct and proximate result of Defendant's negligence, Plaintiff and the Class Members have suffered and will continue to suffer injury, damage, and loss.

**COUNT II**
**ULTRAHAZARDOUS ACTIVITY/STRICT LIABILITY**

74.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

75.     Defendant's manufacture and emission of EtO at its South Charleston Plant constitutes an ultrahazardous activity.

76.     Manufacture of EtO and other noxious chemicals is abnormally dangerous and cannot be made safe by the exercise of the utmost care. The manufacturing procedures utilized at the South Charleston plant resulted, and continues to result, in emissions of EtO to surrounding neighborhoods, which pose a high degree of risk to Plaintiff and Class Members.

77.     There is likelihood that emissions of EtO will result in life-threatening cancer. This risk cannot be eliminated as long as EtO is emitted into populated areas. Likewise, it was completely inappropriate for Defendant to locate and operate their South Charleston plant in a populated area while at the same time causing large volumes of EtO to be emitted into the atmosphere.

78.     Defendant's emission of EtO created a high degree of risk to those who live in the surrounding area and substantially increased their risk of developing cancer and related diseases.

79.     The activities conducted by Defendant are exceedingly dangerous and offer little or no value to the surrounding community.

80.     Because these activities are ultrahazardous, Defendant is strictly liable for any injuries proximately resulting therefrom.

81.   As a direct and proximate result of Defendant's ultrahazardous activities, Plaintiff and Class Members were significantly exposed to EtO and have suffered and will continue to suffer injury, damage, and loss.

## COUNT III
## MEDICAL MONITORING

82.   Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

83.   Plaintiff and Class Members have been significantly exposed to EtO levels that are far higher than normal background levels. EtO is a dangerous toxin that has been proven to cause cancer in humans.

84.   Plaintiff and Class Members were significantly exposed to EtO due to Defendant's tortious actions.

85.   As a proximate result of their exposure to EtO, Plaintiff and Class Members have a significantly increased risk of contracting several different types of cancer. This increased risk makes periodic diagnostic medical examinations reasonably necessary.

86.   Monitoring procedures exist that makes early detection of these cancers possible and beneficial. These monitoring procedures are different than that normally recommended in the absence of toxic exposures, and are reasonably necessary due to Plaintiff's and Class Members' exposures to EtO.

87.   As a result, Plaintiff and the Class should be awarded the quantifiable costs of such a monitoring regime.

## COUNT IV
## WILLFUL AND WANTON CONDUCT

88.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

89.     At all times relevant, Defendant owed a duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living in the areas surrounding its facility.

90.     Notwithstanding its duty, Defendant breached its duty by, among other things:

   a.  Emitting dangerous volumes of EtO into the air;

   b.  Failing to employ safe methods to adequately control EtO emissions from its facility;

   c.  Failing to use alternative manufacturing procedures which would not result in the emission of EtO into neighboring communities;

   d.  Failing to locate its EtO manufacturing operations in an unpopulated area; and

   e.  Failing to warn neighboring residents that were being exposed to EtO at levels that increase their exposure to disease.

91.     As a direct and proximate result of Defendant's willful and wanton conduct, Plaintiff and Class Members have suffered and will continue to suffer injury, damage, and loss.

### COUNT V
### PUBLIC NUISANCE

92.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

93.     At all times relevant hereto, Defendant knew EtO to be hazardous and harmful to human beings.

94.     Plaintiff and Class Members have a common right to breathe clean air without dangerous levels of carcinogens such as EtO.

95.     Defendant's unreasonable use and emission of EtO at its South Charleston facility substantially and unreasonably infringes upon and transgresses this public right.

96.     Defendant knew or should have known that the levels of EtO gas emitted from its facility would have a deleterious effect upon the health, safety, and well-being of people living in the nearby areas.

97.     Defendant's operation of its South Charleston Plant caused those who live in the surrounding area to breathe air containing high levels of EtO on a routine and constant basis, causing a substantially elevated risk of cancer.

98.     As a proximate result of Defendant's operation of its facility, Plaintiff and the general public's common right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

99.     As a proximate result of Defendant's operation of its facility, EtO continuously invaded and contaminated the areas surrounding Plaintiff's and Class Members' residences, thereby exposing them to EtO.

100.    As a proximate result of Defendant's use and emission of EtO, Plaintiff and Class Members sustained and will continue to suffer injury, damage, and loss.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

a.     For an Order certifying the Class, as defined herein, and appointing Plaintiff and their Counsel to represent the Class;

b.     For an award of damages, including nominal and compensatory damages, as allowed by law and in an amount to be determined;

c.     To fund a medical monitoring program in an amount determined just and reasonable;

d.     For an award of punitive damages as allowed by law and in an amount to be determined;

e.     For an award of attorney's fees, costs, and litigation expenses, as allowed by law;
f.     For prejudgment interest on all amounts awarded;

g.     For injunctive and declaratory relief, as allowed by law; and

h.     Such other and further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

**FILED:**  This 6th day of December, 2019.

**Respectfully submitted,**

**MORGAN & MORGAN, P.A.**

BY:     __/s/ Mark E. Troy_____
          MARK E. TROY, ESQ.
          WV Bar ID No. 6678
          MORGAN & MORGAN, P.A.
          222 Capitol Street, Suite 200A
          Charleston, WV 25301
          Telephone: (304) 345-1122
          Facsimile: (304) 414-5692
          mtroy@forthepeople.com

T. MICHAEL MORGAN*
FL Bar No. 0062229
MORGAN & MORGAN, P.A.
20 N Orange Ave., Suite 1600
Orlando, FL 32801
mmorgan@ForThePeople.com
P: (407) 418-2031
F: (407) 245-3384
*Attorney for the Plaintiff and the Putative
Class Pending Visiting Attorney Admission
Pursuant to Local Rules of Civil Procedure
44.6, 83.1, and 83.6*

JOHN A. YANCHUNIS*
FL Bar No. 324681
MORGAN & MORGAN, COMPLEX
LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
jyanchunis@ForThePeople.com
P: (813) 223-5505
F: (813) 223-5402
*Attorney for the Plaintiff and
the Putative Class Pending Visiting Attorney
Admission Pursuant to Local Rules of Civil
Procedure 44.6, 83.1, and 83.6*

RENE F. ROCHA*
LA Bar No. 34411
MORGAN & MORGAN, COMPLEX
LITIGATION GROUP
3530 Magazine St.
New Orleans, LA 70115
rrocha@ForThePeople.com
P:  (954) 318-0268
F:  (954) 327-3018
*Attorney for the Plaintiff and
the Putative Class Pending Visiting Attorney
Admission Pursuant to Local Rules of Civil
Procedure 44.6, 83.1, and 83.6*

FRANK PETOSA*
FL Bar No. 972754
MORGAN & MORGAN, COMPLEX
LITIGATION GROUP
8151 Peters Road
Suite 4000
Plantation, FL 33324
fpetosa@ForThePeople.com
P:  (954) 318-0268
F:  (954) 327-3018
*Attorney for the Plaintiff and
the Putative Class Pending Visiting Attorney
Admission Pursuant to Local Rules of Civil
Procedure 44.6, 83.1, and 83.6*