IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LEE ANN SOMMERVILLE, et al.,

                Plaintiffs,

v.                                  CIVIL ACTION NO.  2:19-cv-00878

UNION CARBIDE CORPORATION,

                Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Dismiss Plaintiff's First Amended Class Action Complaint, [ECF No. 27], Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant, Union Carbide Corporation ("Union Carbide"). [ECF No. 37]. Plaintiff, Lee Ann Sommerville, has responded, [ECF No. 46], and the Motion is now ripe for adjudication. The Motion is **GRANTED in part and DENIED in part** for the reasons that follow.

I.    **Introduction**

Plaintiff in this case brings a class action against Union Carbide, the owner and operator of a manufacturing facility in South Charleston, West Virginia, for damages resulting from Defendant's alleged dangerous and reckless emission of ethylene oxide ("EtO"). Pl.'s First Amend. Class Action Compl. ¶ 1 [ECF No. 27]. Plaintiff alleges that EtO is a colorless and odorless known carcinogen that the

Environmental Protection Agency ("EPA") classifies as a "hazardous air pollutant." *Id.* at ¶¶ 1–19. The First Amended Class Action Complaint ( the "Complaint") alleges that U.S. companies became broadly aware of EtO's carcinogenic effects in 1977 and the National Institute of Occupational Safety and Health (the "NIOSH"), the U.S. Department of Health and Human Services (the "HHS"), the World Health Organization (the "WHO"), and the EPA have continued to confirm EtO's carcinogenic and mutagenic properties since 1977. *See id.* at ¶¶ 19–27. Plaintiff further claims that "[w]hile acute inhalation exposure to high concentrations of EtO can cause headache, dizziness, nausea, fatigue, respiratory irritation, vomiting and other types of gastrointestinal distress, studies show that long-term exposure to EtO increases the risk of cancer, including lymphomas, leukemias, myeloma, and breast cancer." *Id.* at ¶ 20.

Defendant's plant in South Charleston manufactures EtO and utilizes EtO for other heavy industrial processes. According to Plaintiff, Defendant's plant in South Charleston has emitted huge volumes of EtO gas as a result of these operations every year since 1978. *Id.* at ¶ 17. Plaintiff claims that because EtO's half-life in the atmosphere is 211 days, it can remain in the atmosphere for months; and because it is heavier than air, it can linger and travel along the ground. *Id.* at ¶¶ 29–30. Union Carbide allegedly operated its plant in South Charleston "without sufficient pollution controls to limit and/or eliminate the emissions of toxic EtO" and failed to warn Plaintiff and putative Class Members that "the air was materially contaminated with toxic levels of EtO." *Id.* at ¶¶ 37, 39.

The Complaint avers that the "EPA's 2014 National Air Toxics Assessment ('NATA') demonstrated severe cancer risks in the area surrounding the South Charleston Plant. The 2014 NATA places the cancer risks of the census tracts measured in and around South Charleston as the highest in West Virginia and among the highest in the country." *Id.* at ¶ 33. Plaintiff further avers that the 2014 NATA indicates that the "the elevated cancer risks in and around South Charleston are almost entirely due to Union Carbide's EtO emissions." *Id.* at ¶ 34.

Plaintiff and putative Class Members have lived within the vicinity of Defendant's plant in South Charleston during the time Defendant has been emitting EtO. *Id.* at ¶ 42. The Complaint claims that Plaintiff and putative Class Members live in an area that has been identified [to] "present more than a doubled increase in likelihood of developing cancer as compared to the vast majority of the U.S. population living in other areas." *Id.* at ¶ 45. The Complaint further states that "the EPA estimates that Class Members are up to 7 times more likely to develop cancer than the average American." *Id.* at ¶ 5. Plaintiff and Class Members are "at an increased risk of developing cancer, and periodic diagnostic medical examinations are reasonably necessary" as a result of Defendant's conduct. *Id.* at ¶ 46.

Plaintiff brings this class action against Defendant, alleging the following claims: (1) negligence (Count I); (2) ultrahazardous activity/strict liability (Count II); (3) medical monitoring (Count III); and (4) willful and wanton conduct (Count IV). Defendant now moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 37].

## II.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

## III.   Discussion

### a.   Traditional Tort Claims – Negligence, Willful and Wanton Conduct, and Strict Liability

Plaintiff alleges three traditional tort claims against Defendant: Count I– negligence; Count IV–willful and wanton Conduct; and Count III– ultrahazardous

4

activity/strict liability. Defendant moves to dismiss on two main bases. First, that Plaintiff failed to plead a cognizable injury. And second, that the factual allegations in Plaintiff's Complaint are insufficient to support a claim for each tort.

Non-injurious conduct—no matter how tortious—is not justiciable. All three of these traditional torts require a plaintiff to allege that he or she sustained an injury or harm caused by defendant's tortious conduct. *See Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 94 (4th Cir. 2011). Under West Virginia law, the elements of a negligence action are: (1) the existence of a duty, (2) the breach of that duty, (3) loss or damage to another caused by the breach, and (4) actual loss or damage to another. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 30 (5th ed.1984); *see also Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004). The distinction between negligence and willful and wanton conduct rests on the requisite mental state. *See Groves v. Groves*, 158 S.E.2d 710, 713 (W. Va. 1968). To establish willful and wanton conduct, a plaintiff must show that the defendant "was conscious of [its] conduct, and conscious ... that injury would likely or probably result from [its] conduct, and that with reckless indifference to consequences [it] consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." *Stone v. Rudolph*, 32 S.E.2d 742, 749–50 (W. Va. 1944).

West Virginia law adopts the doctrine of strict liability for abnormally dangerous activity as articulated in the Restatement (Second) of Torts (1976). *Crum v. Equity Inns, Inc.*, 685 S.E.2d 219, 230 (W. Va. 2009). "Restatement (Second) of Torts § 519 (1976) provides that: (1) One who carries on an abnormally dangerous

5

activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm; and (2) [t]his strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous." *Id.*

In general, to satisfy the harm element of these torts, "an injury must already have occurred, although a plaintiff sometimes may recover for future effects of a present injury that are reasonably certain to occur." *See Rhodes*, 636 F.3d at 94 (citing *Cook v. Cook*, 607 S.E.2d 459, 464 (W. Va. 2004)); *see also Ellard v. Harvey*, 231 S.E.2d 339, 342 (W. Va. 1976) (holding that "a plaintiff may recover the cost of reasonable and necessary future medical and hospital services and for future pain and suffering where the evidence shows that it is reasonably certain that such future expenses will be incurred and are proximately related to the negligence of the defendant"). "[C]ontingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery." *Callihan v. Surnaik Holdings of WV, LLC*, No. 2:17-CV-04386, 2018 WL 6313012, at *2 (S.D.W. Va. Dec. 3, 2018) (denying defendants' motion to dismiss claims for negligence and gross negligence because there were factual allegations of past injury suffered); *Barker v. Naik*, No. 2:17-CV-04387, 2018 WL 3824376, at *3 (S.D.W. Va. Aug. 10, 2018) (granting defendant's motion to dismiss because plaintiffs' allegations that they were reasonably certain to suffer "effects of physical exposure to noxious emissions from the fire" was insufficient to plead an injury).

In *Rhodes*, the Fourth Circuit affirmed that the presence of a toxic substance

in plaintiffs' blood, standing alone, was insufficient to "establish harm or injury for the purposes of proving a negligence claim under West Virginia law." *Rhodes*, 636 F.3d at 95. That case involved allegations that E.I. du Pont de Nemours and Company ("DuPont") had, for an extended period of time, discharged chemicals into the environment surrounding Wood County, West Virginia, thereby contaminating the drinking water in the area. *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 755 (S.D.W. Va. 2009), judgment entered, No. 6:06-CV-00530, 2010 WL 11622804 (S.D.W. Va. Jan. 6, 2010), and aff'd in part, appeal dismissed in part, 636 F.3d 88 (4th Cir. 2011). In that case, plaintiffs argued that because of defendant's tortious conduct they suffered a "significantly increased risk of developing certain diseases, including liver disease, cholesterol abnormalities, and certain cancers, when compared to the general population's risk." *Rhodes*, 636 F.3d at 95. The Fourth Circuit held that this showing did not satisfy the injury requirement, emphasizing that the plaintiffs' increased exposure to toxic substances does not equate to a showing that it is "reasonably certain" the plaintiffs would develop future injuries. *See id.*

Here, Plaintiff's allegations are insufficient to plead an injury under a theory of negligence, willful and wanton conduct, or strict liability. Plaintiff claims that "Plaintiff and Class Members have suffered significant exposure to hazardous EtO gases relative to the general population in the U.S." Pl.'s First Amend. Class Action Compl. ¶ 43 [ECF No. 27]. Further, Plaintiff claims that she and the putative Class Members live in an area that has "been identified to present more than a doubled

increase likelihood of developing cancer" as compared to other areas of the country. *Id.* at ¶ 45. Plaintiff claims that she and the putative Class Members are "up to 7 times more likely to develop cancer than the average American." *Id.* at ¶ 5. Sommerville nor any of the putative Class Members have been diagnosed with cancer. *Id.* at ¶54. The Complaint does not allege that Sommerville or any of the Class Members currently suffer from any disease caused by exposure to EtO. Showing exposure to a toxic substance, here EtO, does not in and of itself establish an injury for the purpose of causes of action sounding in traditional tort law.

Nowhere in the Complaint do Plaintiff and putative Class Members quantify the alleged likelihood of developing cancer or other diseases from exposure to EtO. Although the Complaint makes clear that Plaintiff and putative Class Members' risk of developing cancer is allegedly significantly higher than that of the average American, the Complaint fails to contextualize the average risk of developing cancer. Claiming that a person is more likely than the general population to develop a disease does not equate to a plausible pleading that that person is "reasonably certain" to develop a disease, and thus sustain future injuries. *See Rhodes*, 636 F.3d at 95; *see also Barker*, 2018 WL 3824376, at *3. Plaintiff therefore fails to plausibly allege an injury for her negligence and strict liability causes of action. Because she fails to allege an injury for her negligence claim, she also fails to allege sufficient facts to state a claim under the higher standard of willful and wanton conduct. Defendant's Motion is thus **GRANTED** as to Count I, III, and IV.

8

### b. Medical monitoring

"A claim for medical monitoring seeks to recover the anticipated costs of long-term diagnostic testing necessary to detect latent diseases that may develop as a result of tortious exposure to toxic substances." *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 429 (W. Va. 1999). In other words, "a claim for medical monitoring is essentially 'a claim for future damages.'" *Id.* at 429–30 (quoting *Ball v. Joy Techs., Inc.*, 958 F.2d 36, 39 (4th Cir.1991)).

In order to sustain a claim for medical monitoring expenses under West Virginia law, the plaintiff must prove that (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible. *Acord v. Colane Co.*, 719 S.E.2d 761, 770 (W. Va. 2011) (citing *Bower*, 522 S.E.2d at 432).

Importantly, to recover under medical monitoring, a plaintiff must still demonstrate that a defendant's conduct was tortious conduct. "[T]he need for future medical monitoring does not create a new tort." *Id.* It simply creates a "compensable item of damage[,] [the cost of medical surveillance,] when liability is established under traditional theories of recovery." *Id.*

I remain skeptical of the injury element of a medical monitoring cause of action. But West Virginia law is clear that under *Bower*, "a plaintiff asserting a claim for medical monitoring costs is not required to prove present physical harm resulting from tortious exposure to toxic substances." *Bower*, 522 S.E.2d at 431. An exposure to a harmful substance "and the concomitant need for medical testing constitute the injury." *Id.* at 430. The decision in *Bower*, however, did not relax the standard for establishing an injury. *Rhodes*, 636 F.3d at 98. The injury that underlies a claim for medical monitoring is, as with any other tort, "the invasion of any legally protected interest." *Bower*, 522 S.E.2d at 430 (citing Restatement (Second) of Torts §7(1) (1964)). "Although the physical manifestations of an injury may not appear for years, the reality is that many of those exposed have suffered some legal detriment; the exposure itself and the concomitant need for medical testing constitute the injury." *Id.* (citing *Hansen v. Mountain Fuel Supply*, 858 P.2d 970, 977 (Utah 1993)). In *Bower*, the Supreme Court of Appeals of West Virginia further explained the injury element of medical modeling by adopting the analysis from the D.C. Circuit:

> It is difficult to dispute that an individual has an interest in avoiding expensive diagnostic examinations just as he or she has an interest in avoiding physical injury. When a defendant negligently invades this interest, the injury to which is neither speculative nor resistant to proof, it is elementary that the defendant should make the plaintiff whole by paying for the examinations.

*Id.* (quoting *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 826 (D.C.Cir.1984) (footnote omitted)).

In this case, Plaintiff has sufficiently alleged a claim for medical monitoring.

The Complaint identifies the putative class to include "[a]ll natural persons who have resided within census tracts 54039000100, 54039012900, 54039000200 (the 'class zone') for a period of one year or more, at any point between January 1, 1978 and the date of this complaint (the 'class period')." Pl.'s First Amend. Class Action Compl. ¶ 53 [ECF No. 27]. The Complaint claims that the population living in these census tracts has been identified to present more than a doubled increase in likelihood of developing cancer as compared to the majority of the U.S. population living in other geographical areas. *See id.* at ¶ 45. The Complaint clearly alleges that EtO is a known toxic substance and that Plaintiff and putative Class Members have been significantly exposed to higher concentrations of EtO than the general public because of their proximity to Defendant's manufacturing plant. These detailed allegations satisfy the pleading requirement on the first two elements for a medical monitoring claim. *See Bower*, 522 S.E.2d at 432.

The next element is tortious conduct. As previously stated, Defendant argues that the Complaint does not include sufficient facts to state a claim for negligence, willful and wanton conduct, or strict liability. Though I find that Plaintiff and Class Members did not plausibly allege a cognizable injury under traditional tort law for these causes of action, I disagree with Defendant as to the remaining elements. I therefore find that Plaintiff plausibly alleges that Defendant's conduct was tortious. Plaintiff plausibly alleges negligent conduct. Defendant had a duty to operate its Plant in South Charleston in a reasonably safe fashion, which includes taking appropriate measures to minimize or eliminate the release of highly toxic substances

11

into a heavily populated community. *See Strahin*, 603 S.E.2d at 205 (discussing the fundamental concepts of negligence law). Plaintiff alleges that Defendant breached that duty by the following:

> a. [e]mitting dangerous volumes of EtO into the air; b. [f]ailing to employ safe methods to adequately control or eliminate EtO emissions from the facility; c. [f]ailing to use alternative manufacturing processes which would not result in the emission of EtO into neighboring communities; d. [f]ailing to locate its EtO manufacturing units in an unpopulated, or at least much less populated, area; and e. [f]ailing to warn neighboring residents being exposed to EtO at levels that increase their exposure to disease.

Pl.'s First Amend. Class Action Compl. ¶ 70 [ECF No. 27]. These factual allegations plausibly allege breach. Further, Plaintiff plausibly alleges that Defendant engaged in willful and wanton conduct—acting with the heightened mental state of conscious disregard or utter indifference. The Complaint asserts the NIOSH, the HHS, the WHO, and the EPA all classify EtO as a highly toxic substance and known human carcinogen. Therefore, it is plausible that Defendant—as a manufacturer of EtO— knew that its operations posed a potential danger to the surrounding community. And it is further plausible that Defendant consciously disregarded those risks to the health, safety, and well-being of that community by failing to employ safe methods, use alternative manufacturing procedures, locate manufacturing in an unpopulated area, and warn neighboring residents.

Additionally, the Complaint plausibly alleges that Defendant's manufacture and emission of EtO at its plant in South Charleston constitutes an ultrahazardous activity. The following factors are considered when determining whether an activity

is ultrahazardous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Pinnacle Min. Co., LLC v. Bluestone Coal Corp.*, 624 F. Supp. 2d 530, 537 (S.D.W. Va. 2009) (citing *In re: Flood Litigation*, 607 S.E.2d 863, 874 (W. Va. 2004)); *see also* Restatement (Second) of Torts §§ 519–20 (1977). I find it plausible, based on the Complaint, that Defendant's manufacturing of EtO is abnormally dangerous because (1) the alleged highly toxic nature of the substance, (2) the alleged inability to manufacture the substance without producing unsafe levels of emissions, (3) the location of the plant in the populated area of South Charleston, and (4) the alleged lack of value of EtO to the South Charleston community.

The Complaint satisfies the tortious conduct element of medical monitoring because I find that Plaintiff plausibly alleges Defendant's conduct was negligent or willful and wanton, and that the Defendant engaged in a type of activity for which it would have been held strictly liable, had Plaintiff demonstrated a present injury.

Turning to the fourth and fifth elements as articulated in *Bower*, I find that the Complaint plausibly alleges that Plaintiff and putative Class Members suffer an increased risk of contracting a serious latent disease as the result of Defendant's

13

tortious conduct and that this increased risk makes medical examinations reasonably necessary relative to what would be the case absent exposure. The Complaint alleges that exposure to EtO at the levels in South Charleston creates a "significantly increased risk of contracting cancer, including lymphomas, leukemias, myeloma, and breast cancer." Pl.'s First Amend. Compl. ¶ 83 [ECF No. 27]. As previously stated, the Complaint alleges this risk makes Plaintiff and Class Members 7 times more likely to develop cancer than compared to the general population according to the EPA. *Id.* at ¶ 5. These facts are insufficient to establish that Plaintiff is "reasonably certain" to develop cancer—i.e. not enough to plead an injury under negligence, willful and wanton conduct, or strict liability. But these facts do plausibly show that Plaintiff reasonably needs medical monitoring procedures that are different than would be normally recommended absent her exposure to EtO.

The Complaint further alleges that monitoring procedures to detect these specific types of cancers exist and make early diagnosis possible, thus satisfying the sixth element of the tort. *See id.* at ¶84. Accordingly, Plaintiff plausibly states a claim for medical monitoring. Defendant's Motion to Dismiss Count III is therefore **DENIED**.

## IV.  Conclusion

Defendant's Motion to Dismiss, [ECF No. 37], is **GRANTED** as to Plaintiff's claims for negligence (Count I); ultrahazardous activity/ strict liability (Count II); and willful and wanton conduct (Count IV). The Motion, [ECF No. 37], is **DENIED** as to Plaintiff's claim for medical monitoring (Count III). The court **DIRECTS** the Clerk to

14

send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      May 14, 2020

_____

JOSEPH R. GOODWIN

UNITED STATES DISTRICT JUDGE