IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LEE ANN SOMMERVILLE,

        Plaintiff,

v.                                    CIVIL ACTION NO.   2:19-cv-00878

UNION CARBIDE CORPORATION, et al.,

        Defendants.

**ORDER**

Before this Court is Defendant Union Carbide Corporation's ("UCC") motion to compel Plaintiff Lee Ann Sommerville ("Plaintiff") to fully respond to certain discovery requests. (ECF No. 74.) Plaintiff brings this purported class action against UCC and other defendants, alleging a medical monitoring cause of action stemming from her exposure to ethylene oxide, which she claims "is a powerful cancer-causing gas," while residing in the vicinity of the defendants' manufacturing facility in South Charleston, West Virginia. (ECF No. 85.) Specifically, Plaintiff avers that she and the members of the proposed class have an increased risk of developing lymphomas, leukemias, multiple myeloma, and breast cancer as a result of ethylene oxide emissions from the defendants' facilities dating back at least to 1978. (*Id.*)

On August 21, 2020, UCC served sets of interrogatories and requests for production on Plaintiff. (ECF Nos. 63, 64.) Plaintiff responded to the discovery requests on October 28, 2020. (ECF Nos. 72, 73; *see* ECF No. 74-1.) Thereafter, on November 27, 2020, UCC filed its presently pending motion to compel. (ECF No. 74.) UCC seeks an order compelling Plaintiff to fully respond to Requests for Production Nos.

1 and 7 and Interrogatories Nos. 7 and 8, which concern her medical history, and to Requests for Production Nos. 2–5, 8–19, 21, and 26 and Interrogatories Nos. 3–6, which concern the factual bases of the allegations in Plaintiff's complaint.[1] (ECF No. 70 at 5–7.) Plaintiff responded to the motion to compel on December 22, 2020 (ECF No. 83), and UCC replied on January 8, 2021 (ECF No. 84). As such, the motion to compel is fully briefed and ready for resolution.

## I. ANALYSIS

### A. *Plaintiff's Medical History*

UCC contends that Plaintiff has improperly refused to respond to four discovery requests that would effectively permit it to obtain her entire medical history. (ECF No. 75 at 5–6, 7–12.) Request for Production No. 1 asks Plaintiff to execute releases granting UCC access to certain documents, including her medical treatment records and pharmacy records. (ECF No. 74-1 at 4.) Request for Production No. 7 asks Plaintiff to produce any treatment or pharmacy records "or medical histories" in her possession that relate to her or any "putative class member." (*Id.* at 7.) Interrogatory No. 7 asks Plaintiff to identify her medical diagnoses and any treatment she has received for her conditions. (*Id.* at 27.) Interrogatory No. 8 asks Plaintiff to identify her treating providers for the medical conditions identified in Interrogatory No. 7 and the procedures and diagnostic testing they performed. (*Id.* at 28.)

Plaintiff, for her part, does not object to providing certain information about her medical history, but she argues that this Court should limit the subject matter and temporal scope of the records UCC is permitted to obtain. (ECF No. 83 at 2–6.) To the

---

[1] At the time UCC served the discovery requests at issue in its motion to compel, Plaintiff's First Amended Class Action Complaint and Demand for Jury Trial, filed on March 12, 2020, was the operative complaint. (ECF No. 27.) Plaintiff has since amended her complaint a second time. (ECF No. 85.)

extent Plaintiff seeks to limit the four discovery requests at issue to include only information about the types of cancer she identifies in her complaint—lymphomas, leukemias, multiple myeloma, and breast cancer—such a limitation is unreasonable. The very nature of a medical monitoring cause of action implies that the plaintiff has not previously been diagnosed with the medical condition she alleges could result from her exposure to a harmful substance. *See Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 431 (W. Va. 1999) ("[A] plaintiff asserting a claim for medical monitoring costs is not required to prove present physical harm resulting from tortious exposure to toxic substances."). Restricting discovery of her medical history only to that specific condition would thus not provide much useful information about whether the defendant's conduct, as opposed to some other factor, necessitates medical monitoring in the first place. *See id.* ("[T]he appropriate inquiry is not whether it is reasonably probable that plaintiffs will suffer [physical] harm in the future, but rather whether medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease." (quoting In re *Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 851 (3d Cir. 1990))).

Indeed, to succeed on a medical monitoring cause of action, the plaintiff must show that she "has a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure" due to the defendant's conduct. *Id.* at 433. As UCC points out, Plaintiff's medical history may shed light on other risk factors for the types of cancer identified in the complaint. (ECF No. 75 at 9.) In this manner, Plaintiff's medical history, at least as it relates to her physical condition,[2] is relevant to

---

2 UCC represents that it has withdrawn its requests for any mental health treatment records. (ECF No. 75 at 5 n.2; *see* ECF No. 74-3 at 2–3.)

3

both Plaintiff's medical monitoring claim and UCC's potential defenses to that claim. Therefore, to the extent Plaintiff seeks to screen her treatment records and provide to UCC only those records she believes bear on this action, doing so is improper. Whether some particular aspect of Plaintiff's medical history could be considered a risk factor for the types of cancer identified in the complaint is a question more appropriately posed to an expert with the requisite training to make such a determination and should not be unilaterally decided by Plaintiff in responding to UCC's discovery requests.

The principal dispute between the parties about Plaintiff's medical history is the temporal scope of the information UCC should be able to obtain. Plaintiff argues that UCC is not entitled to the entirety of her medical history dating from birth and represents that she has previously "offered to sign a broad authorization for UCC to obtain any non-mental health medical records going back ten years." (ECF No. 83 at 2–6.) Defendant contends that Plaintiff's proposed limitation is "arbitrary" because she has lived in the area within which the putative class resides for more than ten years and because the complaint "alleges a class period stretching back approximately 40 years." (ECF No. 84 at 2 (emphasis deleted).) Plaintiff's discovery responses reflect that she moved to the "Class Zone," as it is called in her complaint, in 2001. (ECF No. 74-1 at 23–24.) Although Plaintiff's entire medical history may be relevant to the extent it reveals information about other potential risk factors for the types of cancer identified in the complaint, an appropriate starting point for UCC's inquiry into Plaintiff's medical history is 1991, a decade before she moved to the "Class Zone." This will allow UCC discovery into Plaintiff's physical condition during the years she lived outside the "Class Zone" and within it. It should also serve to facilitate further discussions between the parties if, for

example, the earlier records reference treatment Plaintiff received before 1991 and UCC seeks more information about that treatment.

In sum, UCC's motion to compel (ECF No. 74) is **GRANTED** to the extent that Plaintiff is **ORDERED** to respond to Requests for Production Nos. 1 and 7 and Interrogatories Nos. 7 and 8 insofar as they seek information about her physical condition beginning in 1991.

### B. *Factual Information About Plaintiff's Claims*

UCC also argues that Plaintiff should be compelled to respond to discovery requests that it asserts ask her for information about the factual bases for her claims. (ECF No. 75 at 6–7, 12–16.) According to UCC, Requests for Production Nos. 2–5, 10–16, and 21 and Interrogatories Nos. 3–6 "quote[] or paraphrase[] specific factual allegations in Plaintiff's complaint and request[] that she provide additional detail and/or the factual bases for the allegations, including any documents in her possession supporting the allegations." (*Id.* at 6; *see* ECF No. 74-1 at 4–6, 9–12, 14, 25–27.) Requests for Production Nos. 8 and 17–18 seek "documents relating to any actual or contemplated testing for the presence of [ethylene oxide] in in Plaintiff's body or on her property," Request for Production No. 9 seeks "documents relating to any weather modeling analysis in connection with UCC's alleged [ethylene oxide] omissions," Request for Production No. 19 seeks "documents relating to any health risks allegedly caused by UCC's alleged [ethylene oxide] omissions," and Request for Production No. 26 seeks materials that Plaintiff may use to support her motion for class certification. (ECF No. 75 at 6; *see* ECF No. 74-1 at 8–9, 12–13, 16.)

Plaintiff argues that UCC's discovery requests are premature at this stage of the litigation because discovery is ongoing. (ECF No. 83 at 6–10.) She is correct that "most

5

courts agree that '[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically at the end of the discovery period.'" *Sigman v. CSX Corp.*, No. 3:15-cv-13328, 2016 WL 7444947, at *2 (S.D.W. Va. Dec. 27, 2016) (quoting *Capacchione v. Charlotte–Mecklenberg Bd. of Educ.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998)). Presumably, she seeks to apply this same logic to the requests for production as well. However, the majority of the discovery requests at issue seek information about specific allegations in Plaintiff's complaint, even if they do not directly reference one of the complaint's numbered paragraphs. Plaintiff was obligated to "conduct a reasonable investigation of the factual . . . basis for [her] claim before filing" that complaint. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (citing *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 987 (4th Cir. 1987)); *see* Fed. R. Civ. P. 11(b)(3). As such, she should already possess information responsive to these requests, even without the benefit of formal expert discovery. "Because [Plaintiff] has an ongoing duty to timely supplement and correct discovery answers as additional information becomes available, [she] should not wait until the deadline for expert witness disclosures before providing a response to [the discovery requests at issue], if information is currently available to [her] that is responsive to the questions." *Pauley v. CNE Poured Walls, Inc.*, No. 3:18-cv-01508, 2019 WL 3226996, at *2 (S.D.W. Va. July 17, 2019) (citing *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 297 F. Supp. 3d 547, 556 (D.S.C. 2018)); *see* Fed. R. Civ. P. 26(e).

Even for those discovery requests that seek more technical information and are not tied to certain allegations in the complaint, Plaintiff should provide the responsive information known to her at this time and supplement her responses as warranted by further discovery. *See Sigman*, 2016 WL 7444947, at *2 (ordering plaintiffs to produce

6

"documents in their custody or control that they believe support their claims" and "to promptly supplement their answers"). Notably, under the operative scheduling order, Plaintiff's expert disclosures are due by July 2, 2021, and even assuming Plaintiff also provided complete responses to the discovery requests at issue on that date, UCC would have just over two weeks to review those responses, discuss any disputes with Plaintiff, and prepare and serve any follow-up requests before the July 19, 2021 deadline to serve them. (ECF No. 56.) If Plaintiff already has responsive information, there is no reason to constrict UCC's time to serve additional discovery requests about some of the most important aspects of Plaintiff's claim by waiting for the expert disclosure deadline.

Plaintiff suggests that the responsive information in her possession consists only of "the investigation, expert consultation, and work product conducted by [her] counsel." (ECF No. 83 at 10.) UCC asserts that Plaintiff has waived any privilege or work product objections because she did not raise them in her initial responses. (ECF No. 75 at 15.) Indeed, a party waives any objections to discovery "that are not filed within the [applicable] response time . . . unless otherwise ordered for good cause shown." S.D.W. Va. L.R. Civ. P. 37.1(a). The good-cause inquiry is essentially a question of whether the objecting party acted willfully—or at the very least, recklessly—noncompliant with its obligations. *See Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 526 (S.D.W.Va. 2007) (quoting *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 259 (M.D.N.C. 2001)). Plaintiff has not done so here: as opposed to entirely refusing to respond to the discovery requests at issue, she timely objected that they prematurely sought information that was a more proper subject for expert discovery. For the reasons explained herein, the requests are not premature, and Plaintiff must respond to them properly to the best of her present ability. To the extent Plaintiff seeks

7

to assert that responsive information is privileged or protected work product, she has not waived those objections, but she is reminded of her Federal Rule of Civil Procedure 26(b)(5) obligation to provide a privilege log to UCC along with her responses.

In sum, UCC's motion to compel (ECF No. 74) is **GRANTED** to the extent that Plaintiff is **ORDERED** to respond to Requests for Production Nos. 2–5, 8–19, 21, and 26 and Interrogatories Nos. 3–6 as they relate to the information currently available to her, and she may file additional objections if appropriate.

## II. CONCLUSION

For the foregoing reasons, UCC's motion to compel (ECF No. 74) is **GRANTED** as set forth herein. Plaintiff shall provide supplemental responses to the discovery requests at issue to UCC within **twenty-one (21) days** from the date of this Order, unless the parties agree to a different time period.

Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), when a motion to compel is granted or when it otherwise results in the service of the requested discovery, this Court must "require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless "the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action," "the opposing party's nondisclosure, response, or objection was substantially justified," or "other circumstances make an award of expenses unjust." UCC may file an affidavit setting out its expenses on or before **Monday, April 19, 2021**. Plaintiff may file a response to the affidavit on or before **Thursday, April 29, 2021**. The undersigned shall hold the request for expenses under advisement until the affidavit and response are received.

**IT IS SO ORDERED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 9, 2021

_____
Dwane L. Tinsley
United States Magistrate Judge