**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

| | |
|---|---|
| LEE ANN SOMMERVILLE, *individually, and on behalf of all others similarly situated,* | CIVIL ACTION |
| *Plaintiff*, | Case No. 2:19-cv-878 |
| v. | Hon. Joseph R. Goodwin |
| UNION CARBIDE CORPORATION, *et al.*, | |
| *Defendants*. | |

**COVESTRO LLC'S MEMORANDUM IN SUPPORT OF ITS**
**RENEWED MOTION TO EXCLUDE DR. CHARLES COWAN'S ORIGINAL REPORT**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

STANDARD OF REVIEW ....................................................................................................2

ARGUMENT ....................................................................................................3

I. Dr. Cowan admits that his population estimate lacks precision, requiring jurors to improperly speculate in their deliberations. ....................................................................................................5

II. Dr. Cowan's population estimate does not fit the facts of the case as to Covestro because it includes people allegedly exposed to other sources of ethylene oxide.. ....................................................................................................6

III. Dr. Cowan's population estimate is unreliable because he makes unreliable assumptions part and parcel of his methodology.. ....................................................................................................8

A. Dr. Cowan's assumption regarding in-migration and out-migration is patently unreliable.. ....................................................................................................8

B. Dr. Cowan's assumption that 98% of people in Kanawha and Putnam counties remain from the year prior, for every year, is patently unreliable. ....................................................................................................9

C. Dr. Cowan's assumption that every residential unit houses the same number of people is patently unreliable.. ....................................................................................................10

IV. Dr. Cowan structures his population estimate on 1998, 2002, 2011, and 2019 maps that are wholly unreliable.. ....................................................................................................12

CONCLUSION ....................................................................................................12

## INTRODUCTION

Plaintiff's statistics expert, Dr. Charles Cowan, opines that, over the past 20 years, there are approximately 17,295 individuals in Kanawha and Putnam counties who were allegedly exposed to ethylene oxide in an amount exceeding the threshold put forward by Plaintiff's other statistics expert, Dr. Martin Wells. Ex. 1, Cowan Rep. at ¶ 54. By his own admission, Dr. Cowan's testimony has been excluded at least eight times in the past. Ex. 2, Cowan Dep. at 65:22–66:3. The Court should similarly exclude it here for having no "fit" to Plaintiff's allegations regarding Covestro LLC ("Covestro"), as required under *Daubert*, for at least four reasons.

***First***, Dr. Cowan's population estimate has a startling lack of precision. He admits that his population estimate could be off by "a couple of thousand each way." *Id.* at 311:25–312:2. Thus, armed with Dr. Cowan's opinion, jurors would be forced to pick a number from a range of *thousands* guided by nothing but speculation, making it impossible to properly ascertain the number of exposed persons in this case. Courts in other cases have excluded Dr. Cowan's opinions for a similar lack of precision, and the Court should do the same here.

***Second***, Dr. Cowan's population estimate does not fit the facts of the case as to Covestro. The estimate includes some individuals who allege exposure to ethylene oxide emissions from Union Carbide's Institute *only* (a facility unrelated to Plaintiff's claims against Covestro) and some individuals who allege exposure to emissions from a combination of the Institute, Union Carbide's South Charleston operations, *and* Covestro's South Charleston operations (making it impossible to discern Covestro's alleged role). Moreover, the estimate also includes alleged ethylene oxide emissions for a year where Covestro had no relevant operations.

***Third***, Dr. Cowan's population estimate relies on three patently unreliable assumptions as integral pieces of his methodology. The estimate assumes that: (1) in-migration and out-migration

are never greater than net migration, (2) the rate at which individuals stay in Kanawha and Putnam counties is constant for the 39 years examined, and (3) every property unit houses the same number of people.

***Fourth***, Dr. Cowan's population estimate is based on four maps provided to him by counsel purporting to depict alleged ethylene oxide emissions in the area for the years 1998, 2002, 2011, and 2019. In a prior filing, Plaintiff's counsel claimed that Dr. Cowan received these maps from Plaintiff's other expert, Dr. Ranajit Sahu. *See* Dkt. No. 339 at 16. But even if Dr. Sahu did generate the maps provided to Dr. Cowan, they should be excluded for the reasons explained in Covestro's motion to exclude Dr. Sahu's testimony and reports, which is being concurrently filed.

## STANDARD OF REVIEW

Since "expert witnesses have the potential to be both powerful and quite misleading," trial judges must "act as gatekeepers to ensure" expert testimony is not only "reliable" but also "relevant." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (internals omitted); *see also Sommerville v. Union Carbide Corp.*, 149 F.4th 408, 421 (4th Cir. 2025) (same). "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

For evidence to be relevant under Rule 702, it must "fit" the facts of the case by providing "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92 (1993). Expert testimony "fits" if it "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* at 591 (internals omitted). "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id.*

The district court must not "delegate" relevance and reliability determinations "to the jury" by reciting that issues only impact "the weight of the experts' testimony, not their admissibility," because "thorough and extensive examination does not ensure the relevance or reliability of expert testimony." *Sardis*, 10 F.4th at 281–82. In particular, where expert testimony "consists of an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it," close scrutiny "is especially proper." *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 145 (4th Cir. 1994) (quoting *E. Auto Distribs., Inc. v. Peugeot Motors of Am., Inc.*, 795 F.2d 329, 338 (4th Cir. 1986)).

This Court applies a "rigorous" *Daubert* analysis at the class-certification stage, *Rhodes v. E.I. du Pont de Nemours & Co.*, 253 F.R.D. 365, 369 (S.D. W. Va. 2008) (Goodwin, J.), where Plaintiff bears the burden to "come forward with evidence from which the court can determine that the proffered testimony is properly admissible," *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 701 (S.D. W. Va. 2014) (Goodwin, J.) (internals omitted).

**ARGUMENT**

In his original report, Dr. Cowan attempts "to estimate the count of currently living people who were exposed to high levels of EtO gas from Defendants' manufacturing operations." Ex. 1, Cowan Rep. at ¶ 3. Dr. Cowan's methodology began with four maps provided to him by Plaintiff's counsel, which Dr. Cowan said, "represents the area where annual average exposures are higher than national background levels" for the years "1998, 2002, 2011, and 2019." *Id.* at ¶¶ 20, 26, 27, 30. The isopleths (*i.e.*, colored lines) on the maps supposedly represent a level of exposure that would cross Dr. Wells's threshold within 5 years of constant, cumulative exposure (Dr. Cowan's "purple" color code), and 10 (red), 15 (dark orange), and 20 years (light orange). *Id.* at ¶ 32, 35.

From there, Dr. Cowan used publicly available tax parcel data to determine the percentage of residential property units in Kanawha and Putnam counties that fell within a purple, red, dark orange, or light orange isopleth, for the years 1998, 2002, 2011, and 2019. *Id.* at ¶¶ 17–19, 30–36, 51. He then averaged the percentages for all four years to generate a single, average percentage of residential property units that fall within a purple, red, dark red, or light orange isopleth. *Id.* at ¶ 51.

Separately, Dr. Cowan attempted to estimate the number of people who lived in Kanawha and Putnam counties for a continuous period for 2015–2020 (what Dr. Cowan calls "within 5 years," which corresponds with the purple isopleth), 2010–2020 ("within 10 years," which corresponds with red), 2005–2020 ("within 15 years," which corresponds with dark orange), and 2000–2020 ("within 20 years," which corresponds with light orange). *Id.* at ¶¶ 21–25, 37–46. To develop these estimates, Dr. Cowan used several unfounded assumptions, as discussed below.

Dr. Cowan then took his "within 5 years" estimate and multiplied that by his average percentage for the purple isopleth to produce an estimated number of individuals who allege ethylene oxide exposure crossing Dr. Wells's threshold. *Id.* at ¶¶ 51–52. He did the same for "within 10 years" and "red," "within 15 years" and "dark orange," and "within 20 years" and "light orange." *Id.* Dr. Cowan then added those four products together to arrive at his final population estimate, which came to 17,295 people. *Id.* at ¶ 52.

As more fully described below, Dr. Cowan's population estimate and the opinions expressed in his original report should be excluded because they do not fit the facts of the case with regard to Covestro.

## I. Dr. Cowan admits that his population estimate lacks precision, requiring jurors to improperly speculate in their deliberations.

Though he opines in his report that there are approximately 17,295 individuals in Kanawha and Putnam counties allegedly exposed to ethylene oxide, *id.* at ¶ 54, Dr. Cowan admitted at deposition that his calculation could be off by "a couple of thousand each way," Ex. 2, Cowan Dep. at 311:25–312:2. Dr. Cowan did not disclose this startling degree of imprecision until his deposition, and he produced no analysis to explain why his population estimate would be off by a couple of thousand each way, or precisely how many persons "a couple of thousand" could be.

Dr. Cowan's opinions have previously been excluded for imprecision, where the district court described his opinions as "[a]sking a jury to pick a number they 'like' within the boundary range produced by [Dr. Cowan's] margin of error," which the district court held "cannot be allowed under the Court's *Daubert* gatekeeping responsibility" because Dr. Cowan's opinions were "not sound statistical support" for plaintiff's claims. *Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC*, No. 18-1088, 2020 WL 11303335, at *4 (M.D. Fla. Oct. 16, 2020). So too here. Dr. Cowan is once again asking jurors to "pick a number" (from a range of *several thousand*), "[b]ut how is the jury supposed to weigh this evidence and pick a number they like?" *Id.* "There is no standard of measurement to guide the jury except the range itself, and a verdict anywhere within this range would be pure guesswork and unsustainable from an evidentiary standpoint." *Id.*

Dr. Cowan's testimony therefore does not "fit" because it is not "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute," and so should be excluded. *Id.*; *see also Sardis*, 10 F.4th at 289–90 (excluding expert testimony as irrelevant and unhelpful where the jury would be "forced to speculate a guess" if the testimony was admitted).

## II. Dr. Cowan's population estimate does not fit the facts of the case as to Covestro because it includes people allegedly exposed to other sources of ethylene oxide.

At deposition, Dr. Cowan admitted that his analysis of "the population that is within the plume" does not allow him "to distinguish between the effect of the emissions from South Charleston versus Institute" because he "just wasn't even asked to consider that." Ex. 2, Cowan Dep. at 91:13–20. In other words, Dr. Cowan admits that his population estimate combines alleged impacts from Union Carbide's Institute and South Charleston operations *with* Covestro's South Charleston operations. And "nothing in [his] analysis would allow anyone to distinguish or identify what population might have been effected by emissions from just the Covestro plant" because he "wasn't asked to consider one source versus another." *Id.* at 92:6–17.

For that reason, Dr. Cowan's population estimate includes *not only* individuals alleging exposure to Union Carbide or Covestro's South Charleston operations, but it lumps in individuals alleging an exposure to emissions from Institute *alone*. *See id.* at 100:23–101:10, 103:20–105:6. But that approach does not fit the allegations in this case. Plaintiff, on behalf of herself and a putative class, alleges exposure to emissions from South Charleston *only*. *See, e.g.*, Dkt. No. 85 at ¶¶ 1, 3, 4, 7. Her allegations have nothing to do with Institute, and she does not allege that Covestro is responsible for any emissions at Institute. *Id.* Further, to generate his population estimate, Dr. Cowan used a map purporting to model ethylene oxide emissions from Institute and South

Charleston in 1998. Ex. 1, Cowan Rep. at ¶¶ 26, 51. But Covestro did not even begin its South Charleston operations until 2000.[1] Ex. 3, Lenahan Aff. at ¶ 5.[2]

Thus, Dr. Cowan's methodology presents several *Daubert* fit issues as to Covestro. To present a medical-monitoring claim against Covestro, West Virginia law requires that Plaintiff demonstrate a significant exposure to ethylene oxide "through the tortious conduct of" Covestro. *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432 (W. Va. 1999). She cannot make a case against Covestro by pointing to emissions from *other* defendants or at *other* facilities, or by using a population estimate based on alleged ethylene oxide emissions for a year where Covestro had no relevant operations. Therefore, Dr. Cowan's population estimate should be excluded as to Covestro because it lacks "a valid scientific connection to the pertinent inquiry" in this case. *Daubert*, 509 U.S. at 591–92.

Dr. Cowan's opinions have been excluded for these same reasons before. The district court in *County of Cook v. Bank of America Corp.* excluded Dr. Cowan's testimony because he opined that defendant Bank of America engaged in discriminatory loan practices based on a dataset that included loans from other banks. 584 F. Supp. 3d 562, 583–84 (N.D. Ill. 2022). In excluding Dr. Cowan's opinion, the district court observed "[i]t does not take an expert to understand that defendants could not have discriminated in the origination of loans they did not originate or in the foreclosure of loans they did not foreclose." *Id.* The same is true here: It does not take an expert to

[1] And the percentages for the 1998 map are highest for the purple, red, dark orange, and light orange isopleths, because emissions were highest in 1998 out of the four years. *See* Ex. 1, Cowan Rep. at ¶ 51. Meaning, the average percentages for Dr. Cowan's population estimate are being inflated by emissions for a year Covestro had no relevant operations. *See id.*

[2] Exhibit 3 is an affidavit from Robert Lenahan, Senior Engineering Fellow in Covestro's Global Polyether Technology Center, which Covestro timely produced with its expert reliance materials.

understand that Covestro could not have caused alleged exposures to ethylene oxide from a facility where it has no operations or during a year where it had no operations in the putative class area.

The Court should thus exclude Dr. Cowan's population estimate as to Covestro.

## III. Dr. Cowan's population estimate is unreliable because he makes unreliable assumptions part and parcel of his methodology.

To generate his population estimate, Dr. Cowan baked three assumptions into his methodology that are without basis and, thereby, unreliable. The population estimate assumes that (1) in-migration and out-migration are never greater than net migration; (2) the rate at which individuals stay in Kanawha and Putnam counties is constant for the 39 years he examines; and (3) every residential unit houses the same number of people. Since "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record," *Tyger*, 29 F.3d at 142, Dr. Cowan's population estimate should be excluded.

### A. Dr. Cowan's assumption regarding in-migration and out-migration is patently unreliable.

Given that Dr. Cowan sought to estimate the number of people exposed to ethylene oxide in Kanawha and Putnam counties over a given period of time, more people staying in the counties (*i.e.*, the smaller the transience of the population) would mean more people alleging longer and higher cumulative exposures. And more people alleging longer and higher cumulative exposures would increase Dr. Cowan's population estimate.

Yearly net migration data for Kanawha and Putnam counties is publicly available, but data for in-migration and out-migration, figures that Dr. Cowan needed to reach his population estimate, are not. Ex. 1, Cowan Rep. at ¶ 23. No matter, Dr. Cowan simply assumed away the problem: to estimate in-migration and out-migration, Dr. Cowan "set in-migration to zero if net migration was negative," and set "out-migration to zero" if "net migration was positive." *Id.* Of

course, this is objectively without basis because it sets in-migration and out-migration as low as possible each year. As a result, Dr. Cowan's methodological assumption artificially limited the transience of the population, meaning he statistically manufactured an increased number of people who stayed in the counties over time and thus would allege higher cumulative exposures.

To illustrate, assume that net migration in a given year is negative 10. Since the number is negative, Dr. Cowan would set out-migration to 10 (the lowest it could possibly be) and in-migration to 0 (also the lowest it could possibly be). But, in reality, out-migration could have been 110 and in-migration could have been 100. In that scenario, transience would increase, and so the number of people alleging longer-term, cumulative exposure would decrease. Or, assume that net migration in a given year is 10. Since the number is positive, Dr. Cowan would set out-migration to 0 and in-migration to 10. If out-migration was really 100 and in-migration was really 110, transience would increase, too.

Thus, Dr. Cowan's assumption about in-migration and out-migration inflated his estimate—which is in addition to Dr. Cowan's admission that his calculation could be off by "a couple of thousand each way," Ex. 2, Cowan Dep. at 311:25–312:2. Taken together, that demonstrates that Dr. Cowan's opinions are not the product of a reliable method, and the Court should exclude them. *See Norris v. Ford Motor Co.*, 192 F.3d 909, at *2 (4th Cir. 1999) (*per curiam*) (table decision) (affirming district court's exclusion of expert testimony that "had no factual basis for [an] assumption").

### B. Dr. Cowan's assumption that 98% of people in Kanawha and Putnam counties remain from the year prior, for every year, is patently unreliable.

"To facilitate and smooth out" his calculations, Dr. Cowan relied "on averages of numbers of births, deaths, in-migration, and out-migration (averages per year)" in the census data. Ex. 1, Cowan Rep. at ¶ 37. To make his methodology easier to execute, Dr. Cowan assumed "a constant

underlying rate for people to die or move out." *Id.* at ¶ 39. For the purposes of his report, Dr. Cowan assumed a 98% stay rate for the entire period he analyzed (*i.e.*, that for each year, 2% of the population either died or moved out and 98% stayed). *Id.* In other words, Dr. Cowan assumed that for any given year, 98% of the people who lived in Kanawha or Putnam counties would stay put for the next year. *Id.*

As with his assumption about in-migration and out-migration, Dr. Cowan's assumption of a constant stay rate made his methodology simpler than reality and, as a result, limited the transience of the population, meaning that he statistically manufactured an increase in the number of people who stayed in the counties over time and thus would allege longer-term, cumulative exposure. And that is, again, in addition to Dr. Cowan's admission that his calculation could be off by "a couple of thousand each way." Ex. 2, Cowan Dep. at 311:25–312:2.

Therefore, Dr. Cowan's population estimate should be excluded as unreliable. *Perry v. Scruggs*, 17 F. App'x 81, 87 (4th Cir. 2001) (holding the district court did not abuse its discretion in excluding expert whose "assumptions are speculative and not supported by the record"); *see also Cnty. of Cook*, 584 F. Supp. 3d at 583 (excluding Dr. Cowan's opinions because his aggregation of data "yields unreliable results").

### C. Dr. Cowan's assumption that every residential unit houses the same number of people is patently unreliable.

To estimate the number of individuals allegedly exposed to a cumulative amount of ethylene oxide that exceeds Dr. Wells's threshold, Dr. Cowan used maps from Plaintiff's counsel that purport to model alleged exposure to defendants' ethylene oxide emissions for the years 1998, 2002, 2011, and 2019. Ex. 1, Cowan Rep. at ¶¶ 26, 30. It is unclear why Dr. Cowan was provided with maps for those four years and no other years.

Using publicly available tax parcel data, Dr. Cowan determined the number of tax parcels in Kanawha and Putnam counties that fell inside one of the different-colored exposure bands for his maps for 1998, 2002, 2011, and 2019. *Id.* at ¶¶ 17, 33. But Dr. Cowan needed a method to distribute the population of Kanawha and Putnam counties to those tax parcels that fell inside one of the different-colored exposure bands. So, Dr. Cowan simply assumed that the respective populations for Kanawha and Putnam counties are evenly distributed across their respective tax parcels, such that each parcel represents the same number of people. *Id.* at ¶ 34.

While the average American household may feature two-and-a-half kids, the reality is that a residential property unit could house one or eight individuals, or it could be abandoned. *See Parsons v. Columbia Gas Transmission*, No. 19-649, 2022 WL 4809492, at *6, 15 (S.D. W. Va. Sept. 30, 2022) (Tinsley, M.J.) (holding that an expert's use of a tax map "lacked indicia of reliability necessary to accurately identify members of Plaintiffs' putative class" without "substantial additional steps" to connect the "parcels" with "the landowners."). Dr. Cowan recognized that oversimplification in his deposition, Ex. 2, Cowan Dep. at 84:17–85:18, 86:20–87:6, but he did no work to correct it.[3]

Therefore, the Court should exclude Dr. Cowan's population estimate because his assumption that every property unit houses the same number of people renders his entire process unreliable. *Perry*, 17 F. App'x 81 at 87; *see also Cty. of Cook*, 584 F. Supp. 3d at 583.

---

[3] While Dr. Cowan testified at his deposition that his analysis only included residential parcels, he conceded that he also included parcels categorized as "vacant" or "unoccupied" that could become occupied at some other time, and that he could not explain or point to materials disclosed that would demonstrate the process by which parcels were selected for use in his analysis. *See, e.g.*, Ex. 2, Cowan Dep. at 76:21–77:2, 78:9–78:21, 83:18-89:16. So, either Dr. Cowan's disclosure is incomplete or his analysis included irrelevant parcels, but in either event it is impossible to test what precise parcels he included, thus making his methodology and the resulting population estimate unreliable.

**IV. Dr. Cowan structures his population estimate on 1998, 2002, 2011, and 2019 maps that are wholly unreliable.**

Dr. Cowan's population estimate is based on a set of mapping files called "shape files" that purport to depict alleged ethylene oxide emissions from the Institute and South Charleston facilities for the years 1998, 2002, 2011, and 2019. Ex. 1, Cowan Rep. at ¶¶ 26, 30, 33–34; Ex. 2, Cowan Dep. at 45:1–46:19. As noted above, Dr. Cowan received those maps from Plaintiff's counsel. Ex. 1, Cowan Rep. at ¶ 26. During his deposition, Dr. Cowan testified that he knows nothing about how these four maps came to be. Ex. 2, Cowan Dep. at 32:1–32:15. This Court should therefore exclude Dr. Cowan's population estimate because it is impossible to "ensure that" it "rests on a *reliable* foundation," *Sardis*, 10 F.4th at 281 (cleaned up), without being able to test the reliability of the map on which Dr. Cowan's entire analysis is based.

In a past briefing, Plaintiff contended that the maps were generated by another expert, Dr. Sahu. Dkt. No. 339 at 16. But that doesn't fix the issue because Dr. Sahu's modeling itself is unreliable and should be excluded for the reasons explained in Covestro's concurrently filed motion to exclude Dr. Sahu's testimony and opinions.

**CONCLUSION**

For the foregoing reasons, Covestro respectfully requests that the Court grant this motion, exclude Dr. Charles Cowan's testimony and reports regarding his population estimate, and grant such other relief as the Court deems appropriate.

Respectfully submitted,

July 20, 2026

/s/ *Travis L. Brannon*
David A. Fusco (WVBSN 10725)
david.fusco@klgates.com
Travis L. Brannon (WVBSN 12504)
travis.brannon@klgates.com
Wesley A. Prichard (*pro hac vice*)
wesley.prichard@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
T: (412) 355-6500

Jon B. Orndorff (WVBSN 7763)
jon.orndorff@om-pllc.com
Kelly Calder Mowen (WVBSN 12220)
kelly.mowen@om-pllc.com
ORNDORFF MOWEN PLLC
135 Corporate Centre Drive, Suite 524
Scott Depot, WV 25560
Tel. 866.481.2765/Fax 681.245.6313

*Counsel for Defendant Covestro LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| LEE ANN SOMMERVILLE, *individually, and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>UNION CARBIDE CORPORATION, *et al.*,<br><br>*Defendants*. | CIVIL ACTION<br><br>Case No. 2:19-cv-878<br><br>Hon. Joseph R. Goodwin |

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on July 20, 2026, the foregoing document was electronically filed with the Court using the CM/ECF system, which will send a Notice of Electronic Filing to, and constitutes service on, counsel of record.

/s/ *Travis L. Brannon*
Travis L. Brannon (WVBSN 12504)
travis.brannon@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
T: (412) 355-6500