**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**LEE ANN SOMMERVILLE, individually, and on behalf of all similarly situated,**

***Plaintiffs*,**

v.

**UNION CARBIDE CORPORATION, *et al.*,**

***Defendants*.**

**Civil Action No. 2:19-cv-00878**

**Hon. Joseph R. Goodwin**

**MEMORANDUM IN OPPOSITION TO DEFENDANT COVESTRO LLC'S**
**RENEWED MOTION TO EXCLUDE DR. CHARLES COWAN'S ORIGINAL REPORT**

MARK E. TROY, ESQ.
WV Bar ID No. 6678
**MORGAN & MORGAN, P.A.**
222 Capitol Street, Suite 400
Charleston, WV 25301
Telephone: (304) 345-1122
Facsimile: (304) 414-5692
mtroy@ForThePeople.com

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 2
III. LEGAL STANDARD .......... 2
IV. ARGUMENT .......... 4
A. Dr. Cowan used well-known statistical principles and methodologies used by the Census Bureau to estimate population counts. .......... 4
B. The fact that Dr. Cowan's population estimate is an estimate with a normal range of possible values is not a basis for exclusion. .......... 5
C. Dr. Cowan's population analysis is relevant to all Defendants, including Covestro, whose EtO emissions Plaintiffs alleged caused their injury. .......... 9
D. Covestro's challenges to various assumptions underlying Dr. Cowan's statistical analysis, if anything, go to weight, not admissibility of his testimony. .......... 10
1. Dr. Cowan's estimation of net migration relies on conservative assumptions that, if anything, underestimate population counts. .......... 12
2. Covestro misstates the record in arguing that Dr. Cowan assumed a constant stay rate to reach his population estimate. .......... 15
3. Dr. Cowan used commonly accepted methodologies from his experience in the Census Bureau in evaluating average residential parcel occupancy. .......... 16
E. Dr. Cowan's use of Dr. Sahu's exposure modeling maps is not a basis for exclusion. .......... 17
V. CONCLUSION .......... 19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**


*Adams v. Ameritech Servs., Inc.*,
231 F.3d 414 (7th Cir. 2000) .......... 9, 10

*Baxley v. Jividen*,
504 F. Supp. 3d 539 (S.D. W. Va. 2020) .......... 7

*Bazemore v. Friday*,
478 U.S. 385 (1986) .......... 12

*Bell v. WestRock CP, LLC, No. 3:17-cv-829*,
2019 WL 1874694 (E.D. Va. Apr. 26, 2019) .......... 17

*Bower v. Westinghouse Elec. Corp.*,
522 S.E.2d 424 (W. Va. 1999) .......... 9

*Clinchfield R.R. v. Lynch*,
784 F.2d 545 (4th Cir. 1986) .......... 11

*CMFG Life Ins. Co. v. Credit Suisse Sec. (USA) LLC,*
No. 14-cv-249, 2017 WL 4792253 (W.D. Wis. Oct. 23, 2017) .......... 8

*Cnty. of Cook v. Bank of Am. Corp.*,
584 F. Supp. 3d 562 (N.D. Ill. 2022) .......... 10

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) .......... 3

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) .......... 8

*Garlinger v. Hardee's Food Sys., Inc.*,
16 F. App'x 232 (4th Cir. 2001) .......... 4

*In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.,*
No. 2:14-MN-02502, 2016 WL 2940778 (D.S.C. May 6, 2016) .......... 18

*In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.,*
174 F. Supp. 3d 911 (D.S.C. 2016) .......... 13

*In re Ready-Mixed Concrete Antitrust Litig.*,
261 F.R.D. 154 (S.D. Ind. 2009) .......... 8

*In re Wash. Mut. Mortg. Backed Sec. Litig.*,
No. C09–37, 2012 WL 2995046 (W.D. Wash. July 23, 2012)........................................... 8

*In re Zetia (Ezetimibe) Antitrust Litig., No. 2:18-md-2836*,
2022 WL 3337796 (E.D. Va. Aug. 3, 2022)...................................................................... 18

*Johnson v. DeSoto Cty. Bd. of Comm'rs*,
204 F.3d 1335 (11th Cir. 2000) ......................................................................................... 14

*Jolly v. Hoegh Autoliners Shipping AS*,
No. 3:20-cv-01150, 2024 WL 3859800 (M.D. Fla. Mar. 13, 2024) .................................. 8

*Jones v. Blue Cross Blue Shield of La.*,
No. 16-CV-340, 2018 WL 585543 (M.D. La. Jan. 29, 2018)........................................... 11

*Maiz v. Virani*,
253 F.3d 641 (11th Cir. 2001) ........................................................................................... 11

*Mass. Mut. Life Ins. Co. v. DB Structured Prod., Inc.*,
No. 11-30039, 2015 WL 12990692 (D. Mass. Mar. 31, 2015) .......................................... 8

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
989 F. Supp. 2d 165 (D. Mass. 2013) .............................................................................. 6, 8

*Monster Energy Co. v. Vital Pharms., Inc., No. EDCV 18-1882*,
2022 WL 17218077 (C.D. Cal. Aug. 2, 2022)..................................................................... 8

*Norris v. Ford Motor Co.*,
182 F.3d 909, 1999 WL 410119 (1999) ............................................................................ 14

*Parsons v. Columbia Gas Transmission*,
Nos. 2:19-cv-00649, 00279,2022 WL 4809492 (S.D. W. Va. Sept. 30, 2022)................ 17

*Perry v. Scruggs*,
17 F. App'x 81 (4th Cir. 2001)........................................................................................... 16

*Pugh v. Louisville Ladder, Inc.*,
361 F. App'x 448 (4th Cir. 2010).......................................................................................... 3

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
326 F.3d 1333 (11th Cir. 2003) ..................................................................................... 11, 12

*Sardis v. Overhead Door Corp.*,
10 F.4th 268 (4th Cir. 2021) ................................................................................................ 4

*Sommerville v. Union Carbide Corp.*,
224 L. Ed. 2d 857, 149 F.4th 408 (2026)........................................................................ 18

*Stone v. Advance Am.*,
278 F.R.D. 562 (S.D. Cal. 2011) ........................................................................................ 6

*TFWS, Inc. v. Schaefer*,
325 F.3d 234 (4th Cir. 2003) .............................................................................................. 1

*Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*,
29 F.3d 137 (4th Cir. 1994) ........................................................................................ 10, 11

*United States v. 0.161 Acres of Land*,
837 F.2d 1036 (11th Cir. 1988) ........................................................................................ 11

*United States v. Harris*,
30 F.3d 132 (4th Cir. 1994) ................................................................................................ 6

*United States v. Leftenant*,
341 F.3d 338 (4th Cir. 2003) .............................................................................................. 9

*Westberry v. Gislaved Gummi AB*,
178 F.3d 257 (4th Cir. 1999) .............................................................................................. 3

*Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC,*
No. 6:18-cv-1088, 2020 WL 11303335 (M.D. Fla. Oct. 16, 2020)................................ 6, 7

*Whole Woman's Health v. Hellerstedt*,
579 U.S. 582 (2016)........................................................................................................... 14

**Other Authorities**

Fed. R. Evid. 702 ............................................................................................................... 3

Fed. R. Evid. 703 ............................................................................................................. 18

## I. INTRODUCTION

Using widely accepted methodologies in statistics employed by the U.S. Bureau of the Census and drawing from his experience as its Chief of the Survey Design Branch, Dr. Charles Cowan conducted a demographic analysis on Kanawha and Putnam counties. With reference to census data, population data from West Virginia, and ethylene oxide ("EtO") emissions maps the admissibility of which has now been definitively decided from Plaintiffs' air-modeling expert Dr. Ranajit Sahu, Dr. Cowan quantifies the number of people that would be expected to exceed cumulative exposure levels. Covestro does not challenge Dr. Cowan's qualifications or "mount a true *Daubert* challenge" against Dr. Cowan's methodology because Covestro "does not argue that these methods have not been tested, have not withstood peer review and publication, have *excessive* rates of error, have no standards for their application, or have not been accepted in their field." *TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003) (emphasis added). Instead, Covestro misrepresents Dr. Cowan's testimony in arguing that he did not perform an individualized analysis for each class period year and its *Daubert* challenge reads more like an attack on the fields of statistics and demographic analysis. For example, Covestro repeatedly complains that averages do not reflect "reality" and baselessly alleges that Dr. Cowan's expected value calculation (like any computed expected value) represents a limited range of possible values at the 95% confidence interval. Regardless, Covestro never disputes the relevance of Dr. Cowan's testimony, even assuming an actual value at the lower end of this range, to demonstrating numerosity for class certification, arguing that this evidence being proffered at this stage *only* to establish numerosity at the class certification stage would be confusing to a jury.[1] Covestro's arguments fail.

[1] Covestro LLC's Memorandum in Support of Its Renewed Motion to Exclude Dr. Charles Cowan's Original Report (Dkt. No. 453) ("Covestro Brief") at 1.

For these reasons, Plaintiffs request that this Court deny Covestro's renewed motion to exclude Dr. Cowan's original report.

## II. BACKGROUND

Dr. Charles Cowan is the Managing Partner of Analytic Focus LLC, a consulting group focusing on the design, implementation, and evaluation of statistical and sampling techniques.[2] Dr. Cowan earned a Bachelor of Arts and a Master of Arts in Economics from the University of Michigan, and a doctorate in Mathematical Statistics from George Washington University.[3] He has over 50 years' of experience in statistics, research methodology, and economics,[4] including his tenure as Chief Statistician of the Federal Deposit Insurance Corporation, director of quantitative methods at PricewaterhouseCoopers LLP, Chief Statistician of the U.S. Department of Education's National Center for Education Statistics, and Chief of the Survey Design Branch of the U.S. Bureau of the Census.[5] Dr. Cowan has taught undergraduate and graduate coursework at various academic institutions and held positions within multiple professional organizations.[6] He has authored numerous books and articles on statistical design methods.[7] Covestro does not challenge Dr. Cowan's qualifications.

## III. LEGAL STANDARD

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> a. the expert's scientific, technical, or other specialized knowledge will help the

[2] Expert Report of Charles D. Cowan (Dkt. No. 434-4) ("Cowan Rpt.") at 3; https://www.analyticfocus.com/.
[3] *Id.* at 20.
[4] *Id.* at 3.
[5] *Id.* at 3, 19, 20.
[6] *Id.* at 3, 20.
[7] Cowan Rpt. at 21-25.

trier of fact to understand the evidence or to determine a fact in issue;

b. the testimony is based on sufficient facts or data;

c. the testimony is the product of reliable principles and methods; and

d. the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.* "Rule 702 was intended to liberalize the introduction of relevant expert evidence." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). "[T]he proponent of expert testimony does not have the burden to 'prove' anything, but must 'come forward with evidence from which the court can determine that the proffered testimony is properly admissible.'" *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 452–53 (4th Cir. 2010) (citation omitted).

District courts must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Daubert requires a two-part analysis: first, courts determine whether an expert's testimony reflects "scientific knowledge," whether the findings are "derived by the scientific method," and whether the work product is "good science." *Id.* at 590, 593. Second, courts determine whether the expert's testimony is "relevant to the task at hand." *Id.* at 580, 597.

In evaluating scientific expert testimony, the Fourth Circuit has emphasized four guideposts in the reliability analysis: "(1) whether the expert's theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error' inherent in the expert's theory or technique; and (4) whether the expert's methodology is generally accepted in his field of expertise." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021). There must be a "valid scientific connection between the expert's testimony and the pertinent inquiry before the court." *Garlinger v. Hardee's Food Sys., Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001).

## IV. ARGUMENT

### A. <u>Dr. Cowan used well-known statistical principles and methodologies used by the Census Bureau to estimate population counts.</u>

In his report, Dr. Cowan "estimate[d] the total number of persons currently residing in [Kanawha County and Putnam County] who were exposed to high levels of ethylene oxide at issue for one or more years between 1981 and the present."[8] Dr. Cowan used publicly available population data from the Bureau of the Census, Centers for Disease Control and Prevention, Kanawha County Assessor's office, and from the State of West Virginia.[9] Using this information, Dr. Cowan performed a roll forward demographic analysis,[10] "one of the two techniques that's used in the Census Bureau to determine the completeness of the census",[11] with the following formula:[12]

$$Population_{t+1} = Population_t + Births_t - Deaths_t + Inmigration_t - Outmigration_t$$

As "[a]ctual in-migration and out-migration is not known for any specific county in West Virginia,"[13] "to be conservative, [he] set in-migration to zero if net migration was negative, and [he] set out-migration equal to the negative of net migration (to obtain a positive value for out-migration to use in the [above formula]. If net migration was positive, [he] set in-migration equal to net migration and set out-migration to zero."[14]

Using Dr. Sahu's EtO exposure modeling, he "multiplied the percent of units in the class area times" the population estimates he calculated using the above formula, to give him the number

[8] Cowan Rpt. at 6.
[9] *Id.*
[10] Cowan Tr. at 51:5-7; Cowan Rpt. at 6.
[11] Cowan Tr. at 51:9-11.
[12] Cowan Rpt. at 6.
[13] *Id.*
[14] *Id.*

of persons in the class area in Kanawha and Putnam counties whose EtO exposure lasted at least a year.[15] He then performed these calculations for different exposure lengths, computing the number of persons reaching certain cumulative exposures in each county for 1-5 years, 5-10 years, 10-15 years, and 15-20 years,[16] and further broke down his results into six EtO exposure gradients.[17]

**B. <u>The fact that Dr. Cowan's population estimate is an estimate with a normal range of possible values is not a basis for exclusion.</u>**

Defendant is apparently surprised that when Dr. Cowan set out to "estimate[] the total number of persons,"[18] he did just that. In his report, he concluded that there "are likely about 17 thousand persons that were exposed to levels of ethylene oxide for 20 years or more[.]"[19] He calculated "the most probable value,"[20] and as he testified, "any statistical analysis is always going to have a range[.]"[21] Neither Covestro nor Union Carbide has provided any expert testimony suggesting this approach is unreliable or flawed in any way.

Essentially, Covestro argues that the range Dr. Cowan identified at deposition is too large to make his analysis "sound statistical support" for Plaintiffs' claims,[22] but such an argument, if anything, would go to the weight of the evidence, not admissibility. *See Stone v. Advance Am.*, 278 F.R.D. 562, 568 (S.D. Cal. 2011) (holding that defendants' criticism about an expert's wide margin "goes to the weight of the evidence" as defendants "will be able to cross examine [the expert] and present their own expert witness to highlight any weaknesses in the potential rate of error."); *see also United States v. Harris*, 30 F.3d 132 (4th Cir. 1994) (holding that the *Daubert* inquiry "is a

---

[15] *Id.* at 7, 9.
[16] *Id.* at 7, 10.
[17] *Id.* at 9, 16.
[18] *Id.* at 6.
[19] *Id.* at 17.
[20] Cowan Tr. at 311:19-20.
[21] *Id.* at 299:21-22.
[22] Covestro Brief at 5.

flexible one. It does not require a specific margin of error[.] . . . To the extent there is a debate over the reliability of the particular test at issue, these questions go to the evidence's weight, and not its admissibility."); *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, 989 F. Supp. 2d 165, 174 (D. Mass. 2013) ("As other courts have concluded, the ±10 margin of error does not render Dr. Cowan's methodology unreliable. The margin of error speaks to the "'persuasive power of the sample, not its admissibility.'" (citation omitted)).

Covestro relies on *Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC*, No. 6:18-cv-1088, 2020 WL 11303335, at *4 (M.D. Fla. Oct. 16, 2020), but a closer look at *Westgate* makes clear that the same issues in that case are simply not present here. In *Westgate*, the court considered an analysis designed to assess damages caused by defendants' conduct in allegedly using "improper means to cause the owners of Westgate timeshare units to breach their contracts with Westgate." *Id.* at *1. Dr. Cowan designed a random sample of 100 accounts "that would ensure a ±10 percentage point margin of error at the 95% confidence level," which he asserted to be "'well supported in statistics' and … used in many of his prior studies." *Id.* at *3 (citation omitted). However, circumstances beyond his control reduced his sample size to 43, and the "lower sample number increased the margin of error for dollar damages to ±22%." *Id.* The court recognized that "[t]here appears to be no recognized limit to an acceptable margin of error[.]" *Id.* at *3. Ultimately, the court concluded that *as an assessment of damages*, a "range of uncertainty between $1,953,391 and $5,230,747 for a total spread of $3,277,356 is simply too great to satisfy this legal requirement that there be a reasonable basis to compute economic damages." *Id.* at 4 (emphasis added). Specifically, the court took issue with plaintiffs' reliance on a "seldom-used and imprecise process of depositions by written questions" that "were prepared by counsel, who are not experts in sampling theory" and produced answers "that were nuanced and often inconsistent." *Id.* at *4.

Defendants in *Westgate* produced their own statistics expert who criticized the reliability of the study "due to the large margin of error and the absence of a definition in coding accounts as 'influenced.'" *Id.* at *2. While the Court in *Westgate* expressly refused any specific "acceptable margin of error[,]" the survey problems used in a damages calculation are not relevant here. *Id.* at *3. Similarly, Covestro's assertion that a juror would be required to "pick a number" from the range is hyperbole and should be disregarded as such. *See Baxley v. Jividen*, 504 F. Supp. 3d 539, 542-543 (S.D. W. Va. 2020) (reviewing caselaw on *Daubert* at the class certification stage and this Court's holdings that such an inquiry "must be limited to consideration of the expert's opinion which is offered to support the plaintiff's class certification motion").

More importantly, granting this argument any credit entirely mischaracterizes Dr. Cowan's opinion and conflates his conclusion with his explanation of the confidence interval. He ultimately opines, not that there is a wide range of possible numbers of Class members, but instead that "[t]here are likely about 17 thousand persons that were exposed to levels of [EtO] for 20 years or more in Kanawha and Putnam counties combined."[23] The range as to which Covestro complains is what Dr. Cowan testified would comprise the 95% confidence interval for his analysis, which is, by definition a range defined by a lower limit and an upper limit[24]—and is essentially a "margin of error" for the estimated measured number. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. and Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 915 (D.S.C. 2016) (citation and quotation marks omitted).Further, even assuming Dr. Cowan would proffer a range, Covestro makes no

[23] Cowan Rpt. at 17.

[24] Cowan Tr. at 299:11-300:1 (explaining "any statistical analysis is always going to have a range.").

argument that his testimony as to that range would not be relevant or that it would be confusing to the Court to prove numerosity of the relevant population for class certification purposes.[25]

Throughout its brief, Covestro spotlights the few instances where Dr. Cowan's opinions have been excluded for reasons not applicable here. Regardless, Dr. Cowan estimates that of the 200 cases he has provided testimony in, he has been excluded in eight.[26] *See, e.g.*, *Mass. Mut. Life Ins. Co.*, 989 F. Supp. 2d at 174 (denying *Daubert* challenge to Dr. Cowan's testimony); *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *11 (S.D.N.Y. Dec. 3, 2012) (same); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. C09–37, 2012 WL 2995046, at *13 (W.D. Wash. July 23, 2012) (same); *CMFG Life Ins. Co. v. Credit Suisse Sec. (USA) LLC*, No. 14-cv-249, 2017 WL 4792253, at *13 (W.D. Wis. Oct. 23, 2017) (same); *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882, 2022 WL 17218077, at *27 (C.D. Cal. Aug. 2, 2022) (same); *Mass. Mut. Life Ins. Co. v. DB Structured Prod., Inc.*, No. 11-30039, 2015 WL 12990692, at *5 (D. Mass. Mar. 31, 2015) (same). In any event, prior exclusions are no basis to exclude his testimony here. *See, e.g.*, *In re Ready-Mixed Concrete Antitrust Litig*., 261 F.R.D. 154, 164 (S.D. Ind. 2009) (finding expert opinion reliable despite defendant's argument the expert was excluded in prior case); *Jolly v. Hoegh Autoliners Shipping AS*, No. 3:20-cv-01150, 2024 WL 3859800 (M.D. Fla. Mar. 13, 2024) (granting motion in limine to preclude previous *Daubert* rulings and judicial criticisms of plaintiffs experts in unrelated cases).

---

[25] Memorandum of Law in Support of Motion to Certify Class (Dkt. No. 314) at 8 ("Plaintiff's Class MOL").

[26] Cowan Tr. at 65:22-66:3.

**C. Dr. Cowan's population analysis is relevant to all Defendants, including Covestro, whose EtO emissions Plaintiffs alleged caused their injury.**

Covestro argues that Dr. Cowans' population estimate is irrelevant and unreliable because it includes individuals who were exposed to EtO by the emissions of other Defendants at both the Institute and South Charleston facilities.[27] As an initial matter, relevance "presents a low barrier to admissibility[,]' requiring it "only be 'worth consideration'" or have a "'plus value[.]'" *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003) (citations omitted). As Covestro correctly recognizes, distinguishing the source of EtO emissions and providing an analysis of exposure estimates between Defendants was not the subject of his report,[28] but this is not grounds for exclusion. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 425 (7th Cir. 2000) ("[T]he question before us is not whether the reports proffered by the plaintiffs prove the entire case ... [n]o one piece of evidence has to prove every element of the plaintiffs' case; it need only make the existence of any fact that is of consequence more or less probable.") (internal quotation marks and citation omitted).[29] Plaintiffs have produced evidence elsewhere related specifically to Covestro's tortious conduct at the South Charleston facility,[30] but that was outside the scope of Dr. Cowan's demographic analysis.[31] Moreover, to the extent Covestro argues that Dr. Cowan's analysis includes a time period outside of when Covestro was emitting EtO, as Dr. Cowan notes, his

---

[27] Covestro Brief at 6.
[28] *Id.* at 6-7; Cowan Tr. at 91:13–20.
[29] Covestro's citation to the elements of a medical monitoring claim identified in *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424 (W. Va. 1999) is unhelpful here and irrelevant to whether Dr. Cowan's testimony is relevant to Plaintiffs' class claims. Plaintiffs will establish, as discussed above, how their injuries resulted from the tortious conduct of Defendants, including Covestro.
[30] *See, e.g.*, Expert Report of Dr. Ranajit (Ron) Sahu ("Sahu Rpt."), attached hereto as Exhibit A, at 59, 64; Supplemental Expert Report of Dr. Ranajit (Ron) Sahu ("Sahu Supp. Rpt."), attached hereto as Exhibit B.
[31] Cowan Tr. at 92:6-17.

calculations "can readily [be] adapted to any time period."[32] Regardless, the admissibility of Dr. Cowan's testimony does not depend on whether it is independently sufficient to establish each element of Plaintiffs' claims against each Defendant. *Id.* at 425.

Covestro is incorrect that Dr. Cowan's testimony was excluded for the same reason in *Cnty. of Cook v. Bank of Am. Corp.*, 584 F. Supp. 3d 562 (N.D. Ill. 2022). In *Cook*, Dr. Cowan was given a "crippled data set" that he had "to supplement with third-party sources." which necessitated the "inclusion of loan data that is not probative of defendants' practices (as opposed to other lenders' practices) in an analysis putatively designed to ascertain the impact of *defendants'* practices on various populations[.]" *Id.* at 584 (emphasis in original). The court's main concern with Dr. Cowan's methodology was that plaintiffs in that case had failed "to identify *anyone*—any government agency, any compliance professional in the home lending industry, any academic researcher or other commentator—who uses or endorses" the specific aggregation methods he employed. *Id.* at 583. Importantly, and as Covestro recognizes, the deficiency in *Cook* was not distinguishing disparate impacts *between* defendants, but the fact that the data set included "a 'significant' number of loans originated by lenders *other* than defendants." *Id.* (emphasis added). Regardless, Covestro does not dispute that Dr. Cowan's methodology is not that which the Census Bureau employs in its demographic analysis or invoke other considerations at issue in *Cook*.

**D. <u>Covestro's challenges to various assumptions underlying Dr. Cowan's statistical analysis, if anything, go to weight, not admissibility of his testimony.</u>**

Covestro's challenge to assumptions underlying Dr. Cowan's demographic analysis and its caselaw cited in support conflate routine assumptions made in statistical modeling and counterfactual assumptions undermining an expert's conclusions. In *Tyger Constr. Co. Inc. v.*

---

32 Cowan Rpt. at 8.

*Pensacola Constr. Co.*, 29 F.3d 137 (4th Cir. 1994), the Fourth Circuit reversed admission of expert testimony about increased costs caused by time delays allegedly associated with lack of sand materials necessary to complete a construction project. *Id.* at 142. The expert in *Tyger*, however, conceded that during the time period he used in his excessive time calculation the sand stockpile was never depleted. *Id.* at 142-143. The court found that testimony "that the delays in construction were caused by a lack of, or inefficiencies in the production of, sand" to be therefore inadmissible, and further excluded damages calculations based on critical assumptions the expert's own testimony contradicted about approximating mining costs by reference to a different sand pit. *Id.* at 143-144. The court also distinguished a prior holding where it had admitted expert testimony, explaining that "[i]n *Lynch*, an expert based his opinion testimony on facts and data from the United States Bureau of Census. This was appropriate under Rule 703[.]" *Id.* at 144 (citing *Clinchfield R.R. v. Lynch*, 784 F.2d 545 (4th Cir. 1986)).

Dr. Cowan clearly states how he calculated his population estimate using demographic analysis and drawing on his experience with the Census Bureau. *See United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) (holding that expert's opinion is admissible "provided that he states the assumptions on which his opinions are based," even if those assumptions omit certain evidence); *see also Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001) (noting that an expert is permitted to make reasonable assumptions and explain them). As Covestro only questions the factual underpinnings of Dr. Cowan's analysis and not the reliability of his methodology, such a challenge only would go to weight of his testimony. *See Jones v. Blue Cross Blue Shield of La.*, No. 16-CV-340, 2018 WL 585543, at *6 (M.D. La. Jan. 29, 2018) ("[M]atters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to."); *see also Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK*

*Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (holding that where a *Daubert* challenge alleges that an expert "misused a method that, in the abstract, is reliable," "the alleged flaws in [the expert's] analysis are of a character that impugn the accuracy of his results, not the general scientific validity of his methods. The identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination."); *id.* at 1345 ("[N]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility.'"). *Id.* at 1346 (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)). Again, neither Covestro nor Union Carbide has presented any expert testimony criticizing Dr. Cowan's demographic analysis in any way.

**1. Dr. Cowan's estimation of net migration relies on conservative assumptions that, if anything, underestimate population counts.**

Covestro objects first to Dr. Cowan's estimation of net migration, claiming that Dr. Cowan ignored publicly available county-specific data on in-migration and out-migration.[33] As Dr. Cowan explains in his report:

> [I]t is possible to estimate net migration. Net migration is in-migration minus out-migration. Actual in-migration and out-migration is not known for any specific county in West Virginia, so to be conservative I set in-migration to zero if net migration was negative, and I set out-migration equal to the negative of net migration (to obtain a positive value for out-migration to use in the [above formula]. If net migration was positive, I set in-migration equal to net migration and set out-migration to zero.[34]

Contrary to Covestro's representations, these assumptions are conservative in that they would lead to a reduced population estimate. As Dr. Cowan explained, it is "conservative because… any time that [he could] ascribe it to out-migration, [he] ascribed it to out-migration, which means that for purposes of estimating the number of people, I've underestimated[.]"[35] His model provided a slight

[33] Covestro Brief at 8-9.
[34] Cowan Rpt. at 6.
[35] Cowan Tr. at 110:5-9.

underestimate because it did not allow for people who moved out of the county to move back into the county.[36] Covestro claims that such an assumption would underestimate population transience leading to an inflated estimate of cumulative exposures but fails to support that allegation with any evidence. Furthermore, Covestro does not describe how negligible any such effect would be, especially given how it would be counterbalanced by undercounting exposure duration from in-migration during the first half of the class period.

> Q. But your assumption is that the population stays except for the net out-migration, right?
>
> A. Again, we're discussing one-tenth of the total population, one-tenth of 1 percent of the total population, not one-tenth. One-tenth of 1 percent of the total population. So if I make that assumption, the overall effect is negligible. That's number one. And number two is, you know, all of this stuff cancels itself out because I'm cumulating. So sometimes people move in, sometimes people move out. I'm making assumptions that make the mathematics manageable for a tenth of a percent of the population.[37]

At deposition, Dr. Cowan testified that this assumption "would have a minimal effect on the overall population[,]"[38] and defense counsel even provided him with an example of how his net migration estimate would underestimate exposure duration:

> Q. If an individual had lived there from 1980 and then moved out in 2007, it had 27 years that they had accumulated exposure, right?
>
> A. If they moved out and they moved back in?
>
> Q. No. If they just – they lived there – they lived there in 1980, and then based on your assumptions here, and then just say hypothetically where I made the change in 2007, that they left to allow for an in-migration, that person who out-migrated, after 27 years, they would have had 27 years of accumulated exposure and then they migrated out of the area.
>
> A. Under the hypothetical that you just offered, that's true, which means that now I don't have somebody who had accumulated 27 years of exposure,

[36] *Id.* at 53:9-12.
[37] *Id.* at 125:13-126:2.
[38] *Id*. at 129:9-10.

> because I said in my report, I wasn't including those. Those people are gone.[39]

In sum, as he explained, "for at least half the time period, [his treatment of net migration would be] reducing the number of people who are exposed, not increasing,"[40] and regardless, it only would involve "miniscule little numbers [that do not] affect the overall estimate because these things average out, according to the central limit there."[41] Regardless, Covestro's criticisms of Dr. Cowan's treatment of net migration goes, if anything, to the weight of the evidence, not its admissibility." *See, e.g., Johnson v. DeSoto Cty. Bd. of Comm'rs*, 204 F.3d 1335, 1343 n.14 (11th Cir. 2000) (ruling that statistical evidence derived from voter registration data is admissible under *Daubert* to determine relevant population features and noting that if proposed expert makes faulty assumptions, these go "to the weight of the evidence" and are "freely challengeable on cross-examination"); *see also Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 622 (2016) ("If every expert who overestimated or underestimated any figure could not be credited, courts would struggle to find expert assistance.").

Covestro's caselaw here is irrelevant. In *Norris v. Ford Motor Co.*, 182 F.3d 909, 1999 WL 410119 (4th Cir. 1999) (*per curiam*) (Table), the Fourth Circuit affirmed exclusion of an expert who had offered an opinion that an airbag failed to deploy because of a faulty clock-spring mechanism. *Id.* at *1. However, the expert (who had not examined the car or airbag system) had relied on a Technical Service Bulletin that "by its own terms did not apply" to plaintiff's car, which the court found to be impermissibly speculative. *Id*. Here, Dr. Cowan stated in his report how he

---

[39] *Id.* at 127:20-128:12 (objection omitted); *see also id.*at 112-8-24.
[40] *Id*. at 114:5-8; *see id.* at 119:10-14.
[41] *Id.* at 114:2-5 (cleaned up).

calculated net migration and used conservative assumptions that he testified would not affect his total estimate.

**2. Covestro misstates the record in arguing that Dr. Cowan assumed a constant stay rate to reach his population estimate.**

Covestro offers no record-based challenge to Dr. Cowan's population model's assumption of a constant underlying rate for people to die or move,[42] beyond repeating its general skepticism of the broader field of statistics that averages are simpler than "reality."[43] As Covestro concedes however, Dr. Cowan computed averages of numbers of births, deaths, in-migration, and out-migration based on census data.[44] Covestro is incorrect that Dr. Cowan applied the same average across the whole period in his analysis of population estimates:

> Q. [J]umping down to 39 you say, "Assuming a constant underlying rate for people to die or move out." I just want to clarify. Are you assuming the same death rates and migration rate year over year by averaging them out so it's the same number being plugged in for each year in your analysis; is that what this says?
>
> A. No, that's referring to within a year. So -- but, obviously, I'm not assuming the same death rate or moving out rate because in the chart that you showed me this morning, it -- the number of people who died or the number of people who out-migrate changes from year to year.[45]
>
> Q. Okay. Did you do – and you did an individualized analysis for each year, is that what you did?
>
> A. Yes.[46]

---

[42] Cowan Rpt. at 11.
[43] Covestro Brief at 10.
[44] Cowan Rpt. at 10.
[45] Cowan Tr. at 154:18-155:6.
[46] *Id.* at 155:14-17. To provide a visual graphic of the population shifts in Kanawha and Putnam counties, Dr. Cowan conducted a Markov chain where he computed the average stay factor, 98%, specifically "[f]or the purpose of drawing the charts[.]" *Id.* at 159:2; Cowan Rpt. at 14.

Covestro fares even worse in attempting to support its point in the caselaw. In *Perry v. Scruggs*, 17 F. App'x 81 (4th Cir. 2001), the Fourth Circuit affirmed exclusion where an expert "relied on hearsay, basing his opinions on estimates provided by the manager of the golf course," without furnishing "the underlying facts" for the calculations or making any "alternative showing that the underlying facts or data were of a type reasonably relied on by other experts in the field[.]" *Id.* at 87. Covestro makes no similar argument here, other than its objection to its own misrepresentation of Dr. Cowan's analysis. Here, Dr. Cowan did not make speculative assumptions "not supported by the record[,]" but relied on Census data Covestro has offered no reason to doubt. *Id.*

**3. Dr. Cowan used commonly accepted methodologies from his experience in the Census Bureau in evaluating average residential parcel occupancy.**

Finally, Covestro posits that, for reasons it does not fully explain, resident counts in tax parcels in one EtO exposure band might be so different from another band as to undermine the reliability of Dr. Cowan's analysis.[47] Covestro's again argues that Cowan used averages to calculate population,[48] but as Dr. Cowan explained, he "accumulate[ed] properties that are residential and then appl[ied] commonly accepted rates from the Census Bureau as to what the average number of people within an occupied unit is."[49]

---

[47] Covestro Brief at 10-11.

[48] *Id.* at 11.

[49] Cowan Tr. at 88:2-6. Covestro questions Dr. Cowan's inclusion of some "vacant" and "unoccupied" properties. Covestro's Brief at 10, n. 3. But again, Covestro misses the point. As he testified, relying "on [his] experience at the Census Bureau," whether properties were possibly vacant is incorporated into his analysis using occupancy averages. *Id.* at 86:16-87:3. As he explained, he was performing a "statistical estimate" [for which he did not need to know] for individual properties whether they're occupied or not, just whether they could be occupied." *Id.* at 87:4-6. He "accumulate[ed] properties that are residential and then appl[ied] commonly accepted rates from the Census Bureau as to what the average number of people within an occupied unit is." *Id.* at 88:2-6. Dr. Cowan never testified that "he could not explain or point to materials disclosed that would demonstrate the process by which parcels were selected[,]" only that he would need to review his files in order "to determine exactly which units were aggregated to a total of residential units within a county within each of these areas." *Id.* at 89:1-5.

On this point, Covestro relies on *Parsons v. Columbia Gas Transmission*, Nos. 2:19-cv-00649, 00279, 2022 WL 4809492, *7 (S.D. W. Va. Sept. 30, 2022) (Tinsley, M.J.), but that case refutes Covestro's argument. In *Parsons*, defendant challenged an expert's purported identification of a class using maps that she admitted "were deficient in seven of nine of the 'essential features' that 'all maps created within a professional environment should have.'" *Id.* at *6. This Court found that "substantial additional work" would be needed to reliably identify the class, distinguishing the cases plaintiffs cited because they included "mass tort-related claims based on exposure in which geographic proximity to a polluter or event forms the basis of the class definition." *Id.* at *6-7. (discussing *Bell v. WestRock CP, LLC*, No. 3:17-cv-829, 2019 WL 1874694, at *6 (E.D. Va. Apr. 26, 2019) where the court affirmed a class that consisted of "a clear boundary separating class members from non-members[.]") Here, the class is defined by just such a geographic limitation,[50] and Plaintiffs rely on Dr. Cowan's testimony in their class certification motion to support the numerosity requirement.[51] Further, Covestro misrepresents Dr. Cowan's population count, where he examined the parcel count of each of the exposure gradient areas and then multiplied that percentage by the county population to estimate populations in each band.[52] Regardless, nothing in *Parsons* suggests that an expert in demographics analysis cannot use methodologies employed by the Census Bureau to calculate a population estimate.

**E. <u>Dr. Cowan's use of Dr. Sahu's exposure modeling maps is not a basis for exclusion.</u>**

Covestro objects to Dr. Cowan's use of Dr. Sahu's cumulative exposure maps indicating the path of the plume of toxins in Kanawha and Putnam counties for the class period.[53]

---

[50] *See* Plaintiff's Class MOL at 5.
[51] *Id.* at 8.
[52] Cowan Rpt. at 9.
[53] Covestro Brief at 12.

In support thereof, Covestro first argues that Dr. Cowan did not know the origin of the four maps, so his population estimate cannot rest on a reliable foundation.[54] This argument is meritless as Covestro even acknowledges that Dr. Cowan received the maps from Plaintiff's counsel and such maps were generated by another expert, Dr. Sahu.[55] Indeed, "[a]n expert may rely on any 'facts or data,' including another expert's analysis, that experts in the particular field 'would reasonably rely on ... in forming an opinion on the subject.'" *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. and Prod. Liab. Litig*., 2016 WL 2940778, at *3 (D.S.C. May 6, 2016) (quoting Fed. R. Evid. 703). An expert "is not required to reprove the other expert's opinions[,]" as the expert on whom another expert's opinion relies "will be before the jury separately through his own testimony[,]" *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2022 WL 3337796, at *10 (E.D. Va. Aug. 3, 2022), and "[a]n opinion is not inadmissible because counsel conveyed the underlying expert's opinion." *Id.* at *10, n.12.

While Covestro recognizes that Dr. Cowan may rely on maps generated by Dr. Sahu, it argues that if Dr. Sahu did generate the maps provided to Dr. Cowan, "that doesn't [sic] fix the issue because Dr. Sahu's modeling itself is unreliable and should be excluded for the reasons explained in Covestro's concurrently filed motion to exclude Dr. Sahu's testimony and opinions."[56] This argument was rejected by the Fourth Circuit in *Sommerville v. Union Carbide Corp.*, 149 F.4th 408, 423 (4th Cir. 2025), *cert. denied Union Carbide Corp. v. Sommerville*, -- S. Ct. --, 224 L.Ed.2d 857 (2026), and is barred by the mandate rule and the law-of-the-case doctrine and as to the merits of which Plaintiffs refer to their response to the renewed *Daubert* motion challenging Dr. Sahu's testimony filed concurrently with this response.

---

[54] *Id.*
[55] *Id.*
[56] *Id.*

## V. CONCLUSION

Plaintiffs respectfully request that this Court deny Covestro LLC's renewed motion to exclude the testimony of Dr. Cowan in its entirety.

Respectfully submitted,

**LEE ANN SOMMERVILLE,**
**individually, and on behalf of all**
**similarly situated,**
**By Counsel:**

/s/ *Mark E. Troy*__________
MARK E. TROY, ESQ.
WV Bar ID No. 6678
**MORGAN & MORGAN, P.A.**
222 Capitol Street, Suite 400
Charleston, WV 25301
Telephone: (304) 345-1122
Facsimile: (304) 414-5692
mtroy@forthepeople.com

T. MICHAEL MORGAN*
FL Bar No. 0062229
**MORGAN & MORGAN, P.A.**
20 N Orange Ave., Suite 1600
Orlando, FL 32801
mmorgan@ForThePeople.com
P: (407) 418-2031
F: (407) 245-3384
*Visiting Attorney for the Plaintiff and the Putative Class Pursuant to Local Rules of Civil Procedure 83.1 and 83.6*

JOHN A. YANCHUNIS*
FL Bar No. 324681
MARCIO W. VALLADARES*
FL Bar No. 0986917
**MORGAN & MORGAN, COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
jyanchunis@ForThePeople.com
P: (813) 223-5505
F: (813) 223-5402
*Visiting Attorney for the Plaintiff and the Putative Class Pursuant to Local Rules of Civil Procedure 83.1 and 83.6*

RENE F. ROCHA*
LA Bar No. 34411
**MORGAN & MORGAN, COMPLEX LITIGATION GROUP**
400 Poydras Street, Suite 1515
New Orleans, LA 70130
rrocha@ForThePeople.com
P: (954) 318-0268
F: (954) 327-3018
*Visiting Attorney for the Plaintiff and the Putative Class Pursuant to Local Rules of Civil Procedure 83.1 and 83.6*

FRANK PETOSA*
FL Bar No. 972754
**MORGAN & MORGAN, COMPLEX LITIGATION GROUP**
8151 Peters Road, Suite 4000
Plantation, FL 33324
fpetosa@ForThePeople.com
P: (954) 318-0268
F: (954) 327-3018
*Visiting Attorney for the Plaintiff and*

*the Putative Class Pursuant to Local Rules of Civil Procedure 83.1 and 83.6*

JOSH AUTRY*
NY Bar No. 6161962
**MORGAN & MORGAN**
199 Water St, Suite 1500
New York, NY 10038
Tel: (859) 899-8785
Fax: (859) 899-8806
jautry@forthepeople.com
*Visiting Attorney for the Plaintiff and the Putative Class Pursuant to Local Rules of Civil Procedure 83.1 and 83.6*

KELLY L. TUCKER*
*DE Bar No. 6382*
***GRANT & EISENHOFER P.A.***
*123 Justison Street, 7th Floor*
*Wilmington, DE, 19801*
*ktucker@gelaw.com*
*P: (302) 622-7109*
*F: (302) 622-7100*
*Visiting Attorney for the Plaintiff and the Putative Class Pursuant to Local Rules of Civil Procedure 83.1 and 83.6*
**Pro Hac Vice Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**LEE ANN SOMMERVILLE, individually, and on behalf of all similarly situated,**

***Plaintiffs*,**

v.

**UNION CARBIDE CORPORATION, *et al.*,**

***Defendants*.**

**Civil Action No. 2:19-cv-00878**

**Hon. Joseph R. Goodwin**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 20, 2026, a true and correct copy of the foregoing "**MEMORANDUM IN OPPOSITION TO DEFENDANT COVESTRO LLC'S RENEWED MOTION TO EXCLUDE DR. CHARLES COWAN'S ORIGINAL REPORT"** was served upon interested counsel via electronic mail.

*/s/Mark E. Troy*
*Mark E. Troy, WV Bar ID No. 6678*
*Counsel For Plaintiffs*